IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02946-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC.

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY, INC.

    Defendant.

---

**PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERTS UNDER RULE 37(c) AND TO EXCLUDE DUPLICATIVE AND CUMULATIVE EXPERT TESTIMONY**

---

COMES NOW Plaintiff Sunflower Condominium Association, Inc. ("Sunflower"), and files this Response Opposing Defendant Auto-Owners Insurance Company, Inc.'s ("Owners") Motion to Strike Plaintiff's Experts Under Rule 37(c) and to Exclude Duplicative and Cumulative Expert Testimony, and in support states as follows:

## INTRODUCTION

Defendant has moved the Court to exclude two of Plaintiff's retained expert witnesses, Jason Domecq and Edward Fronapfel, alleging that Plaintiff failed to provide a written report prepared and signed by these witnesses as required pursuant to Rule 26(a)(2) and this Court's scheduling order. Fed. R. Civ. P. 26(a)(2)(B); ECF No. 36. Contrary to Defendant's allegation, Fronapfel met the disclosure requirement. Any omission on the part of Domecq was substantially justified and did not result in any prejudice to Defendant that cannot be cured by supplementing his report.

Defendant has also requested this Court exclude the testimony of Plaintiff's expert witnesses Fronapfel and Ford, arguing that their testimony will be duplicative of the testimony of Plaintiff's other expert witnesses and thus unnecessarily cumulative. Fronapfel and Ford possess experience and skills that differ from any of Plaintiff's other expert witnesses, qualifying them to testify on topics that Plaintiff's other expert witnesses cannot. For these reasons, Defendant's motion should be denied.

## ARGUMENT

1. ***Domecq Should Not Be Excluded Because Omission was Substantially Justified, and Defendant was Not Surprised Nor Prejudiced***

    a. **Domecq has substantial justification for his failure to disclose all categories of information**.

Failure to disclose all information required pursuant to Rule 26(a) and the Court's order is substantially justified if there exists a genuine dispute concerning compliance. *See Pierce v. Underwood*, 487 U.S. 552, 565-66 (1988). In this case, Domecq was designated to prepare a cost of repair estimate based on the scope of work identified by SBSA. He did not set out all required categories of information in a "narrative-style" written report because the Xactimate estimate he produced sets forth most, if not all, requirements for disclosure.[1] The methodology used in the Xactimate estimate is the application of unit costs, specific to the region and time period, to the scope of repair devised by the estimator. The Xactimate estimate provides both the replacement cost value and the actual cash value of the scope of repair. Exhibit A at 83. In fact, it is disingenuous for Defendants to argue that Domecq did not disclose several categories of

---

[1] As an example, Plaintiff directs the Court's attention to the first few pages of Domecq's supplemental report and estimate attached hereto as Exhibit A. Beginning at page 4 of Exhibit A, the first page of this typical Xactimate estimate states which price list, specific to location and date, was applied. The following pages list the descriptions, unit prices, quantities, depreciation, and other information for each component or service needed to repair each individual building at the Sunflower property. See Exhibit A at 5-7.

2

information that the civil rules and this Court's scheduling order requires.  The cost of repair report produced by Domecq is an Xactimate estimate which is commonly used in the insurance industry.  Defendant is obviously familiar with Xactimate estimates, the "principles and methods" utilized by Xactimate in formulating an estimate, and how Xactimate principles and methods are applied reliably to the data entered into the software.  In fact, Defendant's own expert, Gary Stevens, used the same Xactimate software to prepare his own cost estimate.  Exhibit B, Excerpt from Estimate Prepared by Gary Stevens.[2]  Domecq's Xactimate estimate itself is a report of the facts or data considered in reaching the cost of repair, the complete statement of the expert's opinion, and the basis for those opinions. Exh. A at 1-2.  Domecq's supplemental report simply conveys his estimate in a narrative form and explains what Xactimate does, which is publicly available on the website, www.xactware.com.  Exh. A.

Defendant suggests that because Domecq did not sign his estimate and because Thalassa Fuhrmann's name is listed as the estimator, that Domecq did not prepare the estimate.  In his supplemental report, Domecq explains that he engaged Fuhrmann to input *his scope of work* into the Xactimate software.  Then, Domecq reviewed all data entered into the Xactimate software and in the final Xactimate estimate and adopted it in its entirety as his own opinion. Exh. A. at 3.  His lack of signature was an oversight, not an indication that he did not prepare the report.  Defendant is aware of Domecq's work on this matter because he interacted with Defendant's adjuster and provided a similar estimate during the claims process prior to suit.  Exhibit D Excerpt from Estimate Prepared by Jason Domecq dated April 2016.[3]

---

[2] For purposes of brevity, Plaintiff has attached as Exhibit B only the first 5 pages of Stevens' 541 page estimate.  If the Court so requests, Plaintiff can provide Stevens' entire estimate to the Court.

[3] For purposes of brevity, Plaintiff has attached as Exhibit D only the first 5 pages of Domecq's 69 page estimate.  If the Court so requests, Plaintiff can provide Domecq's entire estimate to the Court.

Aside from the required information that is contained in the Xactimate estimate, Domecq inadvertently failed to sign the report and list the exhibits he would use to summarize his opinions and the basis for them. This is the first time Domecq has served as an expert witness, and he simply overlooked including that information. Likewise, Plaintiff's attorney simply did not detect Domecq's oversight. Neither Domecq nor Plaintiff acted in bad faith or willfulness in failing to disclose the missing information.

### b. Domecq has supplemented his report.

Domecq has supplemented his estimate to ensure that all information required to be disclosed is also clearly set out in a narrative format. Even though Domecq engaged Thalassa Fuhrmann to input his scope of work into the Xactimate software, Domecq's supplemental report makes clear that it is based on his personal knowledge, he adopted the Xactimate report in full as his own opinion, and Domecq has now signed the report. The supplemental report also lists the exhibits he intends to use—his estimate, photographs, and video recordings, all of which were previously produced to Defendant. Domecq did not change or revise his opinions and did not make any changes to his cost estimate but rather supplemented his report to meet technical requirements. Discovery has not yet closed in this case, and Defendant has ample time to depose Domecq and has, in fact, noticed his deposition for August 15, 2017.

### c. Domecq's failure to disclose some items of information was harmless to Defendant.

Even if the Court finds that Domecq was not substantially justified in failing to disclose some categories of required information, Domecq should not be excluded from testifying because any failure on his part was harmless to Defendant. *See* Fed. R. Civ. P. 37(c)(1). Domecq's failure to sign the estimate and expressly state that he adopts its contents as his own

4

opinion is easily cured, and, in fact, Domecq has issued a supplemental narrative report curing this defect. Defendant has argued that if an expert does not prepare or sign the written report, the opposing party may face difficulty cross-examining the witness at deposition or trial because the witness may attempt to disown some opinions. Domecq's signed supplemental report remedies this alleged prejudice. Domecq's deposition is scheduled to take place in the near future, and Defendant can cross-examine the witness with assurance that he can be held to the opinions expressed in his report.

Domecq's supplementation also cures any other potential prejudice argued by Defendant. Defendant asserts that its own repair cost expert, Gary Stevens, cannot effectively prepare a rebuttal report without full disclosure of Domecq's opinions. First of all, Stevens has been familiar with Domecq's involvement in the case since February 2016 when Domecq attended an inspection with Stevens. Shortly after that inspection, Domecq submitted his original cost of repair estimate for the property which was prepared using Xactimate software. See Exh. D. Photographs and video recordings taken by Domecq were produced by Plaintiff during discovery in this case. On June 21, 2017, Domecq submitted a second estimate, his expert report created for purposes of this litigation, which takes into consideration the scope of work prepared by SBSA. Defendant has also subpoenaed Domecq's file. Stevens' own report states he uses "software such as Xactimate," and he professes sufficient familiarity with the program to opine as to its accuracy. Exhibit C, Expert Report Prepared by Gary Stevens at 1, 3-4. Thus, Stevens was not impaired in his ability to respond to Domecq's estimate at any point in the claims handling or litigation process, but to the extent he somehow may have been unaware of Domecq's opinions, Domecq's supplemental report remedies that alleged prejudice.

Defendant argues that Owners is prejudiced in its ability to bring a *Daubert* challenge against Domecq because his estimate provided no information about Domecq's methods in reaching his opinions. Page 1 of Domecq's estimate identified that it was created using the Xactimate software. Exh. A at 3. As explained above, since Domecq used the Xactimate software, which is common in the construction and insurance industries, Owners was familiar with the methodology utilized in the software as their own expert used the same estimating software. Defendant still has ample time to prepare a *Daubert* challenge if they so choose.

Additionally, Defendant asserts that allowing Domecq to supplement his report would not cure the prejudice to Owners because Domecq would have the unfair advantage of knowing the opinions of Owners' experts before preparing a supplemental report. However, Domecq did not change or revise his opinions in preparing his supplemental report. Rather, he composed a narrative form of his estimate and briefly explained what Xactimate does, which is information Owners could have accessed on the Xactimate website at any time. Moreover, Defendant has had a copy of Domecq's preliminary estimate since the claim process.

**d. If the court determines it must impose sanctions, the court may impose another appropriate sanction in lieu of exclusion.**

If the Court determines it must impose sanctions, it is not required to exclude Domecq as an expert witness. Although Rule 37(c)(1) is expressed in mandatory terms, it does not require exclusion of the expert's testimony, but rather gives the court broad discretion to impose "other appropriate sanctions." Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 37(c)(1) Notes of Advisory Committee on 1993 amendments. *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir., 1999); *Roberts v. Galen of Va., Inc.*, 325 F.3d 776 (6th Cir. 2003) (finding it proper to allow testimony of substituted expert witness when the new

6

witness was prevented from deviating from the prior expert's conclusions); *Croom v. W. Conn. St. Univ.*, 218 F.R.D. 15, 18 (D. Conn. 2002) ("The remedy of preclusion is not to be employed as a 'paper tiger' with parties capitalizing on technical mistakes in discovery, but rather should be employed sparingly when the circumstances demand such a drastic measure.") (also noting that the willfulness of the discovery violation should be considered when determining whether to preclude evidence); *Indiana Ins. Co. v. Hussey Seating Co.*, 176 F.R.D. 291, 292-93 (S.D. Ind. 1997) (characterizing expert's failure to sign report and personally prepare some of its sections as mere technical violations not meriting exclusion).

   2. *Fronapfel Disclosed Required Information and Should Not be Excluded*

   **a. By signing and sealing the report, Fronapfel adopted the report in its entirety.**

Owners argues that it appears that Fronapfel was not involved in preparing the SBSA report, but rather merely "reviewed" it. Owners misunderstands the signature block of the report which is signed as "observed by" Dixon and "reviewed by" Fronapfel. Without any basis, Defendant assert that in forensic engineering industry practices, Fronapfel would not be considered the author of the report. This is incorrect as explained by Fronapfel himself. Exhibit E, Affidavit of Edward Fronapfel. Fronapfel was substantially involved in preparing the report. See *Keystone Mfg. Co. v. Jaccard Corp.*, 394 F. Supp. 2d 543 (W.D.N.Y. Sept. 27, 2005) (disqualification of expert and preclusion of his expert report were not warranted because he had sworn he was substantially involved in preparing the report and that the opinions in the report were his).

Dixon and Fronapfel authored the engineer's report per SBSA company policy and the standards established by the Colorado Department of Regulatory Agencies, State Board of

7

Licensure for Architects, Professional Engineers and Professional Land Surveyors and the National Society of Professional Engineers.  Exh. E at ¶ 23.

Dixon and other SBSA staff carried out visual observation of the Sunflower property.  Exh. E at ¶ 18.  Following the observation, Fronapfel reviewed the observations with Dixon and assigned Dixon, under his responsible charge of engineering, to prepare the base report of findings and opinions.  Exh. E at ¶ 18.  Fronapfel reviewed and edited the base report, and based on his education, training, experience and knowledge, Fronapfel edited, reviewed, and *ultimately concurred with findings provided in the final report*.  Exh. E at ¶ 19 (emphasis added).  Additionally, Fronapfel provided recommendations on how to correct the damages resulting from hail impacts to the site buildings.  Exh. E at ¶ 19.  Following Fronapfel's review, Dixon applied his signature as "Observed by" and Fronapfel affixed his State of Colorado Professional Engineering Licensure stamp, signature, and date as "Reviewed by," as is standard in the practice of Engineering.  Exh E at ¶ 23.

Thus, Fronapfel was in full compliance with the required disclosures under Rule 26(a), and to the extent the Court finds he was not, Fronapfel was substantially justified because Fronapfel signed his report in the usual custom of the engineering industry and did not willfully withhold information.

## b. The Defendant is not prejudiced by the manner in which Fronapfel signed his report.

Even if the Court finds that Fronapfel did not fully comply with the disclosure requirement, any deficiency on his part did not prejudice the Defendant.  Had Defendant only researched the guidelines for affixing one's professional engineer's seal to a document, it would

8

have understood that Fronapfel is indeed an author of the report. See Exh. E at ¶ 23. Plaintiff did not cause any prejudice based on the contention that Defendant was misinformed or unaware of the forensic engineering industry practices as they claimed to be. Furthermore, Owners has no basis for their assertion that Plaintiff is looking to audition Dixon and Fronapfel to see which performs better in a deposition.

### 3. *The Court Should Not Exclude Mr. Fronapfel's Testimony as Cumulative*

**a. Fronapfel's Testimony is not cumulative of Dixon's.**

The testimony of Fronapfel and Dixon will not be cumulative because they possess different areas of experience, education, skills, knowledge and training and they fulfilled different roles in the investigation. Dixon personally made visual observations of all of the Sunflower buildings and has personal knowledge of the physical evidence of damage to the roof, gutters, windows, doors, and other building systems. See Exh. E at ¶ 18. Dixon is a previously court-qualified expert regarding engineering and assessment of the resultant damages that hailstones cause on building components. Exh. E at ¶ 22. As such, and in light of his visual observations to the Sunflower buildings, Dixon may testify as to the scope of damages based on his visual observations.

As the professional engineer tasked with determining the scope of damages manifesting as a result of hailstone impacts and with making recommendations to correct such damages, Fronapfel used Dixon's visual observations and his licensing as a professional engineer to formulate the scope of work to repair the damages to Plaintiff's property. Exh. E at ¶ 13-22. Fronapfel's testimony will focus on the scope of repair based on the investigation conducted by Dixon and other employees of SBSA.

9

At this time, Plaintiff does not anticipate calling both Fronapfel and Dixon to testify at trial. However, in an abundance of caution, Plaintiff has designated both experts in the event Defendant challenges Fronapfel based on the fact that he did not personally inspect the Sunflower property. Since Fronapfel relied, in part, on the visual observations made by Dixon, Plaintiff thought it best to designate Dixon as well as Fronapfel.

### b. In the alternative, Plaintiff should elect whether to designate Fronapfel or to designate Dixon

If the Court finds that having both Dixon and Fronapfel testify would constitute cumulative testimony, and that Plaintiff must proceed with either expert but not both, then the decision whether to designate Fronapfel or to designate Dixon should be Plaintiff's. The Plaintiff "has an interest in having the expert that his lawyer believes to be in his best interest." *Byrum v. Wells Fargo Bank, N.A.,* No. 14-cv-00227, 2015 U.S. Dist. LEXIS 72434 at *11-12 (Dist. Colo, June 4, 2015).

4. *The Court Should Not Exclude Ford's Testimony as Cumulative*

Ford is a licensed Public Adjuster who was hired by Plaintiff to perform an adjustment of the damages to the property. In his role as an adjuster, Ford reviewed the applicable insurance policy, evaluated coverage, and interacted with and negotiated with Owners' adjusters. Ford also prepared a Sworn Proof of Loss for the loss. Because of his involvement in the claim investigation, Plaintiff listed Ford as a fact witness. Anticipating that some of Ford's testimony could be construed as his professional opinions, Plaintiff also designated him as a non-retained expert. Ford is qualified to testify on topics that none of Plaintiff's other designated experts can. In particular, Ford is qualified to evaluate the depreciation to be applied to the loss under the insurance policy issued to Plaintiff. Ford provided to Domecq the depreciation amount that

10

Domecq used in his estimate of the cost of repair. In addition, Ford is the only expert designated by Plaintiff who is qualified and experienced in reading insurance policies, evaluating coverages, and interacting with and negotiating with insurance carrier adjusters. No other expert identified by Plaintiff can testify on these subjects. Because Ford's expert testimony would not be cumulative of that of any other of Plaintiff's experts, his testimony should not be excluded.

## CONCLUSION

For all the reasons explained above, Plaintiff respectfully requests that the Court deny Owners' Motion to Strike Plaintiff's Experts Domecq and Fronapfel and to Exclude Duplicative and Cumulative Expert Testimony in its entirety.

DATED this 9th day of August, 2017.

/s/ *Matthew R. Pearson*
Matthew R. Pearson (Atty. Reg. #49280)
Gravely & Pearson, LLP
425 Soledad, Suite 600
San Antonio, TX 78205
Phone: (210-472-1111
Email: mpearson@gplawfirm.com
Co-Counsel for Plaintiff,
Sunflower Condominium Association, Inc.

/s/ *Wes P. Wollenweber*
Wes P. Wollenweber (Atty. Reg. #30573)
Lisa S. Greenberg (Atty. Reg. #46503)
FELDMANN NAGEL, LLC
3001 Brighton Blvd, Ste 343
Denver, CO 80216
Phone: (303) 813-1200
Email: wwollenweber@feldmann-nagel.com
          lgreenberg@feldmann-nagel.com
Co-Counsel for Plaintiff,
Sunflower Condominium Association, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2017, I electronically served, via email, the foregoing **PLAINTIFF'S RESPONSE OPPOSING DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S EXPERTS UNDER RULE 37(c) AND TO EXCLUDE DUPLICATIVE AND CUMULATIVE EXPERT TESTIMONY** with supporting Exhibits and Affidavit to the following counsel of record:

Trent D. Tanner
Grace A. Fox
Terence M. Ridley
Evan B. Stephenson
Wheeler Trigg O'Donnell LLP
370 17th Street, Suite 4500
Denver, CO 80202-5647
fox@wtotrial.com
ridley@wtotrial.com
stepheson@wtotrial.com
tanner@wtotrial.com

        */s/ Wesley A. Doll*
        Wesley A. Doll, Senior Paralegal