# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02946-WJM-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant's Motion for Leave to File Amended Answer and Counterclaims ("Motion to Amend Answer"). [#80, filed September 18, 2017]. The Motion to Amend Answer is before the undersigned Magistrate Judge pursuant to the Order Referring Case dated January 20, 2017 [#27] and the memorandum dated September 18, 2017 [#81]. After carefully reviewing the Motion and related briefing, the entire case file, and the applicable case law, I respectfully **RECOMMEND** that the Motion to Amend Answer be GRANTED.[1]

## PROCEDURAL BACKGROUND

      Plaintiff Sunflower Condominium Association, Inc. ("Sunflower" or "Plaintiff") initiated this civil action by filing a Complaint in the District Court for Arapahoe County, Colorado on September 28, 2016. *See* [#4]. The dispute arises between Plaintiff, a multi-family homeowners

---

[1] Local Rule 72.3 defines "[d]ispositive motions" to include motions to amend. *See* D.C.COLO.LCivR 72.3(a).

association, and Defendant Owners Insurance Company ("Owners" or "Defendant"), regarding Defendant's alleged breach of its insurance contract.[2] Owners filed its Answer on January 20, 2017. *See* [#22]. The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1332.

The Amended Complaint asserted two causes of action for Breach of Contract and Declaratory Relief arising from Owners's alleged failure to compensate Plaintiff pursuant to an insurance policy and agreement ("Insurance Contract") for damage caused to covered property (the "Property") by a September 29, 2014 wind and hailstorm. *See generally* [#20]. On December 23, 2015, Sunflower submitted an insurance claim to Owners related to damages resulting from the storm, and Owners assigned its adjusters to investigate and report on the loss to the Property. [#62 at ¶¶ 18, 22]. On March 13, 2016, Sunflower, through its public adjuster, Matrix Business Consulting, Inc. ("Matrix"), received an estimate of the damages from Owners's adjuster, Gary Stevens, with a replacement cost value of $857,233.89 and an actual cash value of $590,458.91. [#86 at 2]. On May 4, 2016, Owners received a sworn statement and proof of loss of damage to the Property prepared by R3NG, LLC ("R3NG" and "R3NG Estimate," respectively), in the amount of $1,808,692.36. *Id.* In August 2016, Owners paid Sunflower $515,458.91 for the undisputed amount of the claim. [#62 at ¶ 38]. Owners based this amount off of the estimate authored by Mr. Stevens in March 2016. [#86-2 at 125:8-125:11]. In April 2017, Owners tendered a supplemental payment of $92,951.05, for a total of $608,409.96. [#80-1 at 19].

---

[2] Plaintiff originally sued Auto-Owners Insurance Company, who removed the action to the United States District Court for the District of Colorado on December 2, 2016. *See* [#1]. On December 30, 2016, before Auto-Owners Insurance Company had filed an answer, Plaintiff filed an Amended Complaint naming Owners as the sole defendant. *See* [#20].

On February 2, 2017, this court held a Scheduling Conference, at which the undersigned set a deadline of March 20, 2017 for the joinder of parties and amendment of pleadings and August 2, 2017 as the discovery deadline. *See* [#35, #36]. On March 20, 2017, Plaintiff filed a motion to amend its pleading to add allegations that Owners had acted in bad faith in refusing to fully compensate it for the damages, and corresponding claims for statutory bad faith pursuant to Colo. Rev. Stat. §§ 10-3-1115, 1116 and common law bad faith. *See* [#40]. On April 28, 2017, this court issued a Recommendation that Plaintiff's motion to amend be granted. [#47]. The court accepted and adopted the Recommendation on May 30, 2017, [#52], and the Second Amended Complaint was filed the same day, *see* [#53].

Approximately two weeks later, on June 13, 2017, Plaintiff sought without opposition to amend its pleading to remove any claim to or allegation regarding emotional damages. *See* [#59]. On June 13, 2017, the court accepted the Third Amended Complaint, which is Plaintiff's operative pleading. [#62]. On June 19, 2017, the undersigned granted Owners's unopposed motion to extend the discovery deadline to August 21, 2017. *See* [#65]. Owners filed an Answer to the Third Amended Complaint on June 27, 2017. [#66]. On August 22, 2017, the undersigned granted Plaintiff's unopposed motion to extend the discovery deadline to October 16, 2017 and the dispositive motion deadline to October 30, 2017. *See* [#74]. This court *sua sponte* continued the Final Pretrial Conference from November 1, 2017 to January 5, 2018. *Id.*

On September 18, 2017, Owners filed the pending Motion to Amend Answer, [#80], seeking to add an affirmative defense related to language in the Insurance Contract pertaining to acts of concealment, misrepresentation, or fraud, and to add two counterclaims for Recoupment

and Breach of Contract.  *See* [#80-1].  Plaintiff filed a Response on October 10, 2017, [#86], and

Owners filed a Reply on October 24, 2017, [#90].  The matter is now ripe for disposition.

## STANDARD OF REVIEW

**I.     Federal Rules of Civil Procedure 15 and 16**

Owners filed the Motion to Amend Answer after the expiration of the deadline for

amendment of pleadings and joinder of parties as specified in this court's Scheduling Order.

Therefore, this court considers the Motion pursuant to a two-step inquiry.  First, the court

reviews whether the moving party demonstrates good cause pursuant to Rule 16(b) of the Federal

Rules of Civil Procedure.  *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.,* 771 F.3d

1230, 1242 (10th Cir. 2014); *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518 (10th Cir. 1990).

Next, the court weighs whether the amendment should be allowed pursuant to Rule 15(a).

*Gorsuch*, 771 F.3d at 1242.  *Cf. Fernandez v. Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194,

1195 (D. Colo. 2000) (applying only Rule 15 when the deadline set for amendment in the

Scheduling Order has not yet passed).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and

with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "In practice, this standard requires the

movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent

efforts.'"  *Gorsuch,* 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.,* 204 F.R.D. 667,

668 (D. Colo. 2001)).  This burden is satisfied, for example, when a party learns of new

information in a deposition, or that the governing law has subsequently changed.  *Id.*  "Rule

16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.

Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to

permit the proposed amendment." *Colo. Visionary Acad. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

By contrast, Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993). A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper. *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.,* 175 F.3d 848, 859 (10th Cir. 1999). Whether to allow amendment is within the trial court's discretion. *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

## II.     Federal Rule of Civil Procedure 13

Owners asserts that the proposed counterclaims are compulsory under Federal Rule of Civil Procedure 13, and that if it cannot amend its Answer to assert these counterclaims it "may be barred from asserting them in any future litigation." [#80 at 2]. Under Rule 13, which governs the court's treatment of counterclaims, a party may bring a compulsory counterclaim or a permissive counterclaim. A counterclaim is compulsory, and therefore must be raised in an answer, if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and if it "does not require adding another party over whom the court cannot

secure jurisdiction." *Id.* at 13(a)(1). A counterclaim that is not compulsory is permissive. Fed. R. Civ. P. 13(b).

## ANALYSIS

The insurance policy ("Policy") herein at issue contains the following provision:

**CONCEALMENT, MISREPRESENTATION OR FRAUD**

We will not pay for any loss or damage in any case of:
1. Concealment or misrepresentation of a material fact; or
2. Fraud
committed by you or any other insured ("insured") at any time and relating to coverage under this policy.

[#80-2]. Owners asserts that it discovered only recently that Sunflower violated this provision of the Policy in the following two ways: "(i) by knowingly misrepresenting the date that it discovered the property damage for which it is seeking benefits, and (ii) by submitting a knowingly inflated claim for storm damage." [#80 at 2]. Owners also contends that amendment will not cause Plaintiff prejudice and, indeed, its "affirmative defenses already encompass many of the same issues presented by the counterclaims." [*Id.*]

Sunflower responds that the proposed affirmative defense and counterclaims are not based on new information, but on facts that "Defendant's key agents knew well in advance of the March 20, 2017 deadline to amend pleadings," and, therefore, Owners does not meet the Rule 16(b) standard for good cause. [#86 at 7]. Sunflower argues that even if good cause is shown, the court should deny the Motion to Amend Answer on account of "1) undue delay; 2) undue prejudice to the opposing party; and 3) futility of amendment." [*Id.* at 10].

Owners argues on Reply that while it may have been aware as of this past summer of facts to support its affirmative defense of breach of contract, it lacked the factual basis to bring

an affirmative counterclaim alleging misrepresentation, as opposed to an affirmative defense based on the same theory, until recently. [#90 at 1] Owners further argues that Sunflower will suffer no prejudice because it "has been on notice since at least June 2017 regarding the same issues presented in the counterclaims." [*Id.* at 2].

## I. Discovery on Which Defendant Relies

Owners relies on the following discovery to support its contentions that Plaintiff unreasonably overestimated the cost of repairs and misrepresented the date that it discovered the storm damage. On July 31, 2017, almost one month after Owners filed the operative Answer, [#66], counsel for Owners took the deposition of David Ford, the individual public adjuster assigned to Plaintiff's claim. *See* [#80-13]. On August 15, 2017, counsel for Owners took the deposition of Jason Domecq, Plaintiff's cost of repair expert and the 30(b)(6) representative of R3NG. *See* [#80-11]. The following day, counsel for Owners took the deposition of Cassandra Fricks, a condo owner and member of Plaintiff's board, as the Rule 30(b)(6) designee of Plaintiff. *See* [#80-8]. And, on August 17, 2017, counsel for Owners took the deposition of Denyse Countryman, Plaintiff's property manager. *See* [#80-6]. Finally, on September 12, 2017, Plaintiff disclosed documents, some of which Defendant asserts it requested six months earlier. *See* [#80 at 5 n.3].

***Costs of Repairs.*** Owners frames its theory as follows. Sunflower initially presented Owners with the R3NG Estimate, asserting that the cost to repair the Property would exceed $1.8 million, based upon an Xactimate property damage estimate. [#80-3, #80-4]. According to the R3NG Estimate, the cost to replace each roof at the Property is between $40,200 and $46,500. [*Id.*] However, in 2007, Sunflower paid as little as $17,000 per roof to replace several roofs at

the Property. *See* [#80-5]. Ms. Countryman testified during her deposition that "she would expect construction costs to increase by 'a third, maybe even two-thirds' from 2007 to 2017, [and] she would be 'pretty shocked' if they had doubled during this period." [#80 at 4 (citing #80-6 at 334:15-335:6)]. Owners contends that the R3NG Estimate inflates the cost to perform the roof replacements on the condominium buildings at the Property by between approximately $345,000 and $470,000. [#80 at 4].

In support of its contention that Plaintiff unreasonably overestimated repair costs, Owners references the testimony of Mr. Domecq, who acknowledged that many of the charges listed in the RSNG Estimate are inappropriate. For example, Mr. Domecq testified that the following charges were not warranted:

a. Charging for 20 hours of labor to load/unload some of the flat roofs while charging only 10 hours of labor on others;
b. Charging for the cost to detach and reset nine HVAC units per flat roof for some flat roofs even though they only have eight units currently installed;
c. Charging for the cost to install conduit hangars; and
d. Overestimating the amount of roofing felt to be installed on each roof.

[#80 at 7 (citing #80-10 at 60:6-15, 244:21-245:6)]. Mr. Domecq was unable to speak to the charges associated with the "packaged" air conditioning units, which appeared to Defendant's expert, Gary Stevens, to cost almost twice as much as regular air-condenser units. *See* [#80 at 7-8 (citing #80-11 at 274:8-275:12)]. Additionally, Mr. Domecq was unable to address the following charges, which Mr. Stevens identified as inappropriate:

a. Charging for the cost of removing and replacing skylights measuring between 10.1 to 12 square feet without knowing whether the skylights currently on the Property measure only 8 square feet;
b. Charging for the additional cost of adhering shingles in cold weather to the flat roof sections of the Property that do not have shingled roofing systems;
c. Charging for the cost to install HVAC "conduit hangars" without evidence that the Property currently has conduit hangars installed;

    d. Charging to replace current locksets on utility doors with new locksets rather than reusing current locksets;

    e. Charging to replace full garage doors despite possibility that only damaged portions of the doors could be replaced;

    f. Charging for the cost of "high grade" garage doors without knowing if, in fact, the garage doors currently at the Property are "high grade";

    g. Charging for the cost to paint the garage doors without knowing whether Plaintiff could obtain pre-painted garage doors to match existing doors; and

    h. Charging to add "Low E" glass without knowing whether the windows at the Property in fact currently feature "Low E" glass.

[#80 at 8-9 (citing #80-11 at 257:21-258:12, 258:20-261:24, 269:1-274:7, 278:7-279:19, 281:14-285:16, 287:14-288:12, 288:17-289:22, 291:18-292:17)].  Mr. Domecq acknowledged that the charges Mr. Stevens identified as inappropriate favored Plaintiff, and he admitted that "this one-sided distribution of inappropriate charges 'suggests that the errors are not random.'"  [#80 at 9 (quoting #80-11 at 293:18-294:25)].

Finally, the documents Owners received on September 12, 2017, include a March 20, 2014 bid from a roofing contractor to replace one of the flat roofs on one of the buildings at the Property.  The roofing contractor's bid to perform the work was $7,258, or less than a third of the cost asserted in the R3NG Estimate.  [#80 at 5 (citing #80-7 at 4)].  The $7,258 bid aligned with Owner's lowest estimate for flat roof replacement, which was approximately $7,500.  *See* [#80 at 6].

*Date Sunflower Purportedly Discovered Damage*.  On March 15, 2017, Plaintiff represented in a response to an interrogatory served by Owners that it did not discover the damage to the Property until December 18, 2015, when Ms. Countryman performed a walk-through "as part of her normal duties as Sunflower's community manager."  [#80-14 at 10].  Sunflower reported the claim two days later, on December 20, 2015.  [#80 at 10].  Owners subsequently learned information indicating that Sunflower had knowledge of the damage prior

to December 18, and served "a Request to Admit that Plaintiff misrepresented the date of discovery," in its initial response. [*Id.*]  On July 12, 2017, Plaintiff denied the Request to Admit, and concurrently served a revised response that Ms. Countryman discovered the damage "during the fall of 2015." [*Id.* (citing #80-15 at 10; #80-16 at 3)].

During her deposition, Ms. Countryman testified that she discovered "obvious" hail damage to the Property on September 24, 2015.  [#80-6 at 284:11-285:2].  She testified that she believed the condominium owners comprising the Plaintiff association "should have discovered th[e] obvious damage to their property much sooner than [she] discovered it," and should have reported it as well.  [*Id.* at 291:4-20].  Ms. Fricks testified during her deposition that she knew no later than October 30, 2014 that the September 2014 Storm was "bad"; indeed her car was parked at the Property during the course of the storm and totaled from hail damage.  [#80-8 at 165:22-169:1].  Ms. Fricks submitted a claim for her vehicle to her auto insurance company on October 30, 2014.  [*Id.* at 166:23-24].  The documents Plaintiff produced on September 12, 2017 include an April 27, 2015 communication from R3NG to Plaintiff, stating that R3NG had found evidence of hail damage on the roofs of the Property and urging Plaintiff to contact its insurer regarding the possibility of filing a claim.  Ms. Countryman sent the document to Plaintiff's board of directors the day after it was issued.  [#80-17].

***Incentives*.**  Owners lists several examples of what it refers to as "Plaintiff's efforts to maximize recovery."  [#80 at 9].  First, Owners asserts, the Public Adjuster Contract entered into between Sunflower and Matrix provides that Matrix is entitled to receive "ten percent (10%) of all amount(s) paid by [Owners] . . . includ[ing] payments made voluntarily by [Owners] or after the initiation of litigation if necessary."  [#80-12 at 1].  Second, Mr. Ford testified that he is

entitled to receive eight percent of whatever Matrix recovers. [#80-13 at 32:19-24]. Mr. Ford

also testified in response to Owners's counsel's question asking if he agrees that the contingency

nature of his contract "makes [his] testimony biased in favor of Sunflower," that he is "trying not

to be [biased], but I can see how it would – would be." [*Id.* at 332:22-333:2]. Third, Ms.

Countryman testified that her employer, Plaintiff's property management company, Client

Preference Realty & Management, LLC ("Client Preference"), is entitled to receive four percent

of any settlement Plaintiff recovers, and she is entitled to receive thirty-five percent of any

associated amount Client Preference recovers. [#80-6 at 93:4-94:2, 168:25-169:5]. Finally, Mr.

Domecq testified that he is a partial owner of R3NG, and is entitled to six percent of the

company's annual profits. [#80-11 at 70:16-71:21]. Mr. Domecq agreed with counsel for

Owners that if Sunflower wins this lawsuit, R3NG will "do the work" on the repairs to the

Property and thus "the profits of R3NG [will] increase." [*Id.* at 73:24-76:15]. He also agreed

with counsel for Owners, during a different line of questioning, that he has "a bias in favor of

Sunflower." [*Id.* at 57:6-10].

## II. Application of Federal Rules

### A. Rule 16(b)

Although Owners does not expressly address the Rule 16(b) standard in its affirmative

Motion (and rather discusses it in the Reply), the court ascertains a good cause argument from

Owners's contention that it has not unduly delayed its request to amend.[3] Owners asserts that

---

[3] Ordinarily, a party is not permitted to raise affirmative arguments for the first time in its reply
brief. *See, e.g., M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009).
Although Owners discusses the application of Rule 16(b) in its Reply only, I find that the
arguments it advances regarding no undue delay in seeking the amendment adequately serve to
brief the issue of good cause, and that those arguments provided Sunflower an opportunity to

while it was aware of various facts supporting its proposed counterclaims throughout this litigation, it only recently learned "key facts necessary to prov[e] Plaintiff's concealment, misrepresentation, or fraud, including that much of this conduct appears intentional." [#80 at 13]. Owners points to the following four examples. Owners learned during the July depositions of Messrs. Ford and Domecq and Ms. Countryman that these three individuals have a personal financial stake in the outcome of this litigation, and Messrs. Ford and Domecq acknowledged that these incentives bias them in favor of Plaintiff. Owners received Mr. Stevens's expert assessment of the R3NG Estimate in late July 2017, *see* [#90 at 5; #80-10], and did not have the opportunity to depose Mr. Domecq regarding Mr. Stevens's assessment until August 15, 2017. Owners learned during the deposition of Ms. Countryman and Ms. Fricks that the general expectation of Plaintiff's board is that Sunflower will receive three bids for a project, although Sunflower's board "understand[s] that that's not always the case and we won't always get that." [#80 at 13]; *see* [#80-8 at 57:6-59:19; #80-6 at 316:10-317:6]. Sunflower did not choose R3NG as part of the three-bid process, rather no other options were presented to the board. Finally,

---

argue in opposition that good cause is lacking. Indeed, Sunflower references undue delay in its Rule 16(b) argument. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) ("[R]ough similarity" exists between the Rule 16(b) good cause standard and the Rule 15(a) undue delay analysis). *See also Texas Instruments, Inc. v. BIAX Corp.*, No. 07–cv–02370–WDM–MEH, 2009 WL 3158155, at *2, n.3 (D. Colo. Sept. 28, 2009); *Hans v. Board of County Commissioners of Shawnee County, Kansas*, No. 16-4117-DDC, 2017 WL 3781837, at *3 (D. Kan. Aug. 31, 2017) (noting that the undue-delay analysis is similar to the good-cause analysis) (citation omitted); *Bird v. West Valley City*, No. 2:12–cv–903–PMW, 2014 WL 3547829, at *1 (D. Utah Jul. 17, 2014) (assessing good cause and undue delay together). *But see Roberts v. C.R. England, Inc.*, No. 2:12–CV–0302, 2013 WL 5275942, at *2 (D. Utah Sept. 18, 2013) ("Although there is a 'rough similarity' between the undue delay standard of Rule 15 and the good cause standard of Rule 16, they are distinct provisions under the Federal Rules and thus the Court finds the more reasoned approach is to consider the requirements of each rule separately in relation to Plaintiffs' motion."). Accordingly, I will consider the Parties' arguments under Rule 16(b), notwithstanding Owners's failure to give specific treatment to the Rule in its affirmative brief.

Owners notes that Plaintiff sought to have Owners compensate it at "nearly three times more per roof than it paid when it re-roofed the very same buildings in 2007," [#80 at 13], and that Ms. Countryman testified she would be shocked to learn that "construction costs, including material and labor, [had] doubled" between 2007 and 2017. [#80-6 at 333:14-17, 334:1-335:6].

Sunflower asserts that Owners cannot demonstrate good cause because it had access to and/or knew of the following information prior to the March 20, 2017 deadline for amendment of pleadings. On February 1, 2017, Plaintiff disclosed the information regarding Ms. Fricks's automobile insurance claim to Owners in its First Supplemental Disclosures. [#86 at 7]. On March 15, 2017, Sunflower submitted an interrogatory answer to Owners indicating that it first discovered the hail damage in December 2015; Sunflower subsequently revised this answer on July 12, 2017, when it served its Supplemental Answer to Interrogatory No. 6. [#80-16]. Owners received the R3NG Estimate on May 4, 2016, at which time it had in its possession Mr. Stevens's estimate and could compare the two. [#86 at 8]. Mr. Stevens opined to Owners during the claims process in the summer of 2016 that the R3NG Estimate was intentionally inflated. *See* [#86-1 at 194:19-197:2]. Finally, Owners received Sunflower's documentation regarding the 2007 roof estimates on March 15, 2017.

The "good cause" provision "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). This court is persuaded drawing on Mr. Stevens's opinions, the 2007 roof repair estimates, and Ms. Fricks's auto insurance claim, that Owners had a basis in June 2017 to add to its Answer an affirmative defense regarding misrepresentation, *compare* [#22, filed January 20, 2017] *with* [#66 at 8, filed

June 27, 2017], but concludes that Owners did not learn of the corroborating information, identified above, to justify its proposed affirmative counterclaim until at least July 2017, well after the March 20, 2017 deadline to amend pleadings and the June 2017 deadline to respond to Plaintiff's operative complaint. While Owners argues that it faces a higher pleading standard for asserting concealment and misrepresentation as a counterclaim than as an affirmative defense,[4] this court is more persuaded that Owners did not have adequate information to conclude that Plaintiff's conduct was intentional until September 2017. The record does not lead this court to conclude that Owners was dilatory or failed to act in good faith through the discovery process; thus I find that Owners has provided good cause to satisfy Rule 16(b)(4). Accordingly, I turn to the Rule 15(a) analysis.

B.    Rule 15(a)

Again, Owners asserts it did not unduly delay seeking the amendment because it "only recently learned key facts that Sunflower withheld"; and also argues the amendments will cause no prejudice to Sunflower because the court has not yet set a trial date and the counterclaims "arise out of facts and testimony from Plaintiff's own witnesses." [#80 at 12, 13-14]. Sunflower responds that Owners knew or should have known of the facts upon which the counterclaims are based well before it filed the instant Motion. Sunflower further responds that allowing the

---

[4] *See Alarid v. Biomet, Inc.*, No. 14-CV-02667-REB-NYW, 2015 WL 6376171, at *2 (D. Colo. Sept. 22, 2015) ("Courts within this district and elsewhere in the Tenth Circuit have held that the requirement that a complaint set forth sufficient factual matter allowing for a reasonable inference that the pleader is entitled to relief, as set forth . . . in [*Twombly*] and [*Iqbal*], does not apply by analogy or implication to affirmative defenses") (citing *Michaud v. Greenberg & Sada, P.C.*, No. 11–cv–01015–RPM–MEH, 2011 WL 2885952, *2 (D. Colo. July 18, 2011) (finding that affirmative defense may only be stricken if "as a matter of law, the defense cannot succeed under any circumstance") (citation and quotation omitted). *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (requiring that a plaintiff plead sufficient facts to demonstrate that a claim is plausible on its face).

proposed counterclaims so late in the proceeding would deny Sunflower "the ability to investigate and discover pertinent facts concerning Owners' allegations" and "make it unduly difficult for Sunflower to defend itself against Owners' expansive and novel counterclaims." [#86 at 14].  Finally, Sunflower responds that the proposed amendments are futile because "Defendant has not pled, and would be unable to prove, the elements necessary to succeed on its contrived allegations."  [*Id.*]

1.  *Undue Delay*

Sunflower argues that Owners was aware of the following information on or before March 15, 2017: (1) the R3NG Estimate, "which contrasted sharply with Mr. Stevens' estimate that Owners already had in hand," (May 4, 2016); (2) the opinion of Mr. Stevens that the R3NG Estimate was intentionally inflated (summer 2016); (3) Sunflower's First Supplemental Disclosures, which included documentation regarding Ms. Fricks's auto insurance claim (February 1, 2017); (4) Sunflower's revised interrogatory response correcting the statement that it first discovered the hail damage in December 2015 (March 15, 2017); and (5) documentation from Sunflower regarding the 2007 roof repair costs (March 15, 2017).  [#86 at 11-12]. Additionally, Owners was actively pursuing the theory of an "over-inflate[d]" claim by June 26, 2017, when it added the affirmative defense of misrepresentation, and had secured expert reports on the topic as of July 28, 2017.  [#86 at 12].

In considering whether a party has unduly delayed, courts focus primarily on the reasons for the delay.  *Minter*, 451 F.3d at 1206.  "As a general rule, '[l]ateness does not of itself justify the denial of the amendment.'"  *Midcities Metropolitan District No. 1 v. U.S. Bank National Ass'n*, 44 F. Supp. 3d 1062, 1066 (D. Colo. 2014) (quoting *Minter,* 451 F.3d at 1205).  As

Sunflower asserts, the court may deny a late motion to amend on the basis of untimeliness alone; however, the basis for such a denial is typically the moving party's failure to adequately explain the delay. *Id.* (quoting *Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir. 1994); *Minter*, 451 F. 3d at 1206). *See also Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1285 (10th Cir. 2006).

As discussed above, I find that Owners has sufficiently explained why it did not move to amend its Answer prior to September 18, 2017. The evidence Sunflower references appears sufficient to support the affirmative defense that Owners added to its Answer in June 2017, but not necessarily sufficient to support a counterclaim that includes an element of Plaintiff's state of mind. Indeed, while Owners knew the opinion of Mr. Stevens, and a second expert, Mr. Plitt, that the R3NG Estimate was inflated, Owners did not have the opportunity to inquire into the discrepancies of the estimates or the bases of its experts' opinions until August 15, 2017, when it deposed the corporate representative of R3NG. Notably, Sunflower does not contend that Owners is responsible for delaying the depositions of Ms. Countryman, Mr. Ford, and Mr. Domecq. And Sunflower did not produce, until September 12, 2017, documents that reflect a third-party roofing contractor's bid of $7,258 to replace one of the flat roofs, which bid was closely aligned with Owner's lowest estimate of approximately $7,500, and less than a third of the cost asserted in the R3NG Estimate. This suggests that Plaintiff intentionally (rather than inadvertently) selected the higher bid over a lower one, despite knowledge of at least two data points indicating that R3NG's bid might be significantly inflated. [#80 at 5-6; #80-7 at 4]. The September 2017 production of documents also included an April 27, 2015 communication from R3NG to Plaintiff, stating that R3NG had found evidence of hail damage on the roofs of the

Property and urging Plaintiff to contact its insurer regarding the possibility of filing a claim. The document production also reflects that Ms. Countryman sent the R3NG advisement to Plaintiff's board of directors the day after it was issued. This production thus contains new facts to support Owners's theory that Plaintiff had knowledge of the hail storm damage well before the date as represented by Plaintiff. [#80-17]. Owners filed the instant Motion six days after receiving the document production.

It appears that in addition to the document production, the depositions of several key individuals revealed new facts necessary to support the counterclaim, and it is not at all clear, nor does Sunflower explain, how Owners could have gathered this evidence prior to the March 20, 2017 deadline.[5] Sunflower produced its revised interrogatory response and disclosed the information regarding the 2007 roof replacement costs just five days prior to the deadline for amendment of pleadings.[6] Furthermore, Sunflower does not explain how Owners could have ascertained that Sunflower had misrepresented the date when it had discovered the storm damage when Sunflower itself denied, as of July 2017, that it had known of the hail damage months prior to the December 18 date it had initially disclosed to Owners. *See* [#80-15 at 10 ¶ 29]. Even when Sunflower revised its interrogatory response, it provided only an imprecise period of time of "fall of 2015." *Compare* [#80-16 at 3] *with* [#80-14 at 10]. To find that Owners unduly

---

[5] The case was removed to this court on December 2, 2016 and a Scheduling Conference was held two months later. Under the Federal Rules of Civil Procedure, with exceptions not applicable here, a party cannot seek discovery "from any source" before the Rule 26(f) conferral. Fed. R. Civ. P. 26(d)(1). And, while a party may propound a Rule 34 request twenty-one days after it is served with the summons and complaint, that request is considered "served" on the date of the Parties' initial Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(2). Service was effected on Owners on November 3, 2016, [#1-9], and the Parties convened their Rule 26(f) conference on January 10, 2017, *see* [#36 at 4].

[6] Owners could have moved to extend the deadline, of course, but as with the present Motion, it would have had to satisfy the Rule 16(b) good cause requirement.

delayed would appear to this court as applying to Owners a higher standard than that applied to Sunflower. In other words, such a finding requires Owners to discern facts regarding Sunflower's knowledge of false statements, the falsity of which Sunflower should have been aware but was apparently unwilling to disclose without the pressing of its adversary. Nor is it clear to this court that Owners could have alleged in good faith that Sunflower intentionally misstated the date of discovery, or knew that the R3NG Estimate was inflated, without the production of documents that occurred in September 2017.

I do not view Defendant's actions as a calculated attempt to prejudice Sunflower, as Sunflower suggests, but rather as an attempt to satisfy Owners's obligations under Federal Rules of Civil Procedure and the language of the contract, as discussed below. Accordingly, I find no undue delay to preclude amendment.

2. *Prejudice*

Prejudice in this context arises when "the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971)). This occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* This court is not persuaded that permitting the proposed counterclaims will result in undue prejudice to Sunflower.

Discovery in this case closed on October 16, 2017. *See* [#74]. The legal theory underlying the counterclaims was present as of June 27, 2017, when Owners filed the operative Answer. *See* [#66 at 8]. The factual issues associated with the counterclaims have been present since at least July 28, 2017, when Owners (1) "disclosed an expert report by Mr. Plitt focused

entirely on the alleged 'over-inflation' of Sunflower's claim and opining that this 'over-inflation' may bar Sunflower's recovery based on the Policy's 'fraud clause,'" and (2) "provided Sunflower with the rebuttal expert report of Mr. Gary Stevens," which "highlighted alleged examples of overinflation in the R3NG/Ford estimate, and opined that the R3NG/Ford estimate was 'likely intentionally inflated.'" [#86 at 12]. Sunflower nonetheless expresses concern over its ability to now investigate the allegations supporting the proposed counterclaims as discovery has closed. This court notes that Sunflower does not articulate what discovery, not already in its custody, possession or control, it would seek, and finds this omission significant considering the information most relevant to the proposed amendment is within Plaintiff's, rather than Defendant's, control. Accordingly, I find no prejudice to preclude amendment.

3. *Futility*

The court may deny a motion for leave to amend as futile "when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *E.Spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (citation omitted). Sunflower argues that the proposed amendments do not state or support a claim for common law fraud. *See* [#86 at 14-18]. Owners asserts in its Reply that the theory of recovery is not common law fraud, but breach of the Insurance Contract, specifically the "Concealment, Misrepresentation or Fraud" provision of the Policy. [#90 at 8-9]. I respectfully agree with Owners.

The fraud provision states that Owners "will not pay for any loss or damage in any case of: 1. Concealment or misrepresentation of a material fact; or 2. Fraud committed by you or any other insured…at any time and relating to coverage under this policy." [#80-2]. A fraud

provision in an insurance contract, such as the one at issue here, "intentionally imposes different standards of responsibility and damages–absolute honesty and forfeiture of *all* benefits of the policy and not merely unintended benefits–which removes this case from situations where a party seeks to rescind a contract without such a clause and thus must meet all of the requisites of common law fraud." *American Diver's Supply & Manufacturing Corp. v. Boltz*, 482 F.2d 795, 796 (10th Cir. 1973) (rejecting insured's argument that insurer must prove all elements of common law fraud to prevail on claim that insured violated fraud clause of insurance policy, finding instead that the express terms of the contract, specifically the fraud clause, were dispositive). Under Colorado law, an insurance policy is void and the insurer is released from its contractual obligation where there is "proof of a false statement by insured as to some material matter made for the purpose and with the intention of deceiving the insurer and inducing it to pay more insurance than the amount of the loss sustained." *Northwestern Nat'l Ins. Co. v. Barnhart*, 713 P.2d 1360 (Colo. App. 1985) (citations omitted).

Sunflower argues specifically that Owners "cannot prove that the date Sunflower discovered the damage was false, or that Sunflower intended Owners to take any specific action as a result of the date of discovery," and that Owners "cannot prove that the R3NG Estimate was a material fact or that Owners was ignorant of its falsity." [#86 at 15-16]. Considering the evidence discussed above with respect to when Sunflower represented it discovered the damage and Sunflower's presentation of its hail damage claim to Owners, including the deposition testimony of Mr. Domecq and Ms. Countryman, all of which is memorialized in the proposed Amended Answer, *see* [#80-1 at 9-17], I find that the proposed counterclaim for Breach of Contract is plausible on its face and that Sunflower's contentions are better raised in a motion for

summary judgment. Indeed, the Tenth Circuit has advised that "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact," *Wagnon v. State Farm Fire & Casualty Co.,* 146 F.3d 764, 768 (10th Cir. 1998), and that "[q]uestions of intent which involve intangible factors, including witness credibility, are matters for consideration of fact finder after a full trial." *Baum v. Great W. Cities, Inc., of N.M.,* 703 F.2d 1197, 1210–11 (10th Cir. 1983). *See Bourret v. Aspect Mgmt Corp.*, No. 12–cv–3320–RPM, 2013 WL 6334950, at *1 (D. Colo. Dec. 5, 2013) (granting motion to amend complaint to add fraud claim, despite futility argument, noting disputed issues of material fact involving materiality and intent). Additionally, the Tenth Circuit held in *Wagnon* that "the subject of the misrepresentation *need not ultimately prove to be significant* to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time," and a misrepresentation or omission is "material" whenever "a reasonable insurance company, in deciding its course of action, would attach importance" to the matter. *Id.* at 768–69 (emphasis added). Owners asserts in its Reply that Sunflower's "date of discovery is highly relevant to Owners' investigation because knowing when Plaintiff discovered the loss is central to determining whether Plaintiff's delay in reporting the loss was reasonable for purposes of Owners' late notice defense." [#90 at 9 (citing *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644 (Colo. 2005)].

In issuing this Recommendation, this court reviews the proposed Breach of Contract counterclaim for the sole purpose of passing on Plaintiff's futility argument and for no other reason. Indeed, Defendant proposes a second counterclaim for Recoupment, which neither Party

addresses within the futility context. Accordingly, without passing on any issue not currently before this court, I find that amendment under Rule 15(a) is warranted.

## CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that:

1.  The Motion for Leave to File Amended Answer and Counterclaims [#80] be **GRANTED**;

2.  Should the Honorable William J. Martinez adopt this Recommendation, Defendant shall file a clean version of the Amended Answer and Counterclaims within one (1) business day of the court's ruling; and

3.  Plaintiff shall file a response to the Amended Answer and Counterclaims within fourteen calendar days of the date on which a clean version of the pleading is filed.[7]

---

[7] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Additionally, **IT IS ORDERED** that:

1. The Final Pretrial Conference set for January 5, 2018 is **VACATED and RE-SET** to **March 9, 2018 at 10:00 a.m., with a Final Pretrial Order due to the court no later than seven (7) days prior to the Final Pretrial Conference**; and

2. All other deadlines **REMAIN SET**.


DATED: December 11, 2017                           BY THE COURT:


                                                    s/Nina Y. Wang_____
                                                    United States Magistrate Judge