IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2946-WJM-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO STRIKE**

---

Plaintiff Sunflower Condominium Association, Inc. ("Plaintiff") brings this action against Defendant Auto-Owners Insurance Company, Inc. ("Defendant"), alleging breach of contract, statutory bad faith under C.R.S. §§ 10-3-1115 &-1116, and common law insurance bad faith. (ECF No. 62 at 4, 5, 6.) This matter is before the Court on Defendant's Motion to Strike Plaintiff's Experts under Rule 37(c) and to Exclude Duplicative and Cumulative Expert Testimony ("Motion to Strike"). (ECF No. 67.) For the reasons set forth below, Defendant's Motion to Strike is granted in part and denied in part.

## I. DISCUSSION

Defendant raises four issues with respect to Plaintiff's expert testimony in its Motion to Strike. Defendant argues that: (1) Plaintiff's expert, Jason Domecq ("Domecq"), a roofing contractor with R3NG, LLC, failed to disclose information required

to be disclosed under Rule 26(a)(2) (ECF No. 67 at 5); (2) Plaintiff's expert, Edward Fronapfel ("Fronapfel"), an engineer with Solutions Before Solutions After, Inc. ("SBSA"), also failed to disclose information required by Rule 26(a)(2) (*id*.); (3) Fronapfel's testimony is unnecessarily cumulative of testimony by other experts (ECF No. 67 at 11.); and (4) Plaintiff's non-retained expert, David Ford ("Ford"), "is highly duplicative of the planned testimony of Plaintiff's other experts" (*id*.). The Court will consider each of Defendant's arguments in turn.

**A.     Domecq's Expert Disclosure**

Defendant's first two arguments concern Federal Rule of Civil Procedure 26(a)(2)(B), which provides that "[u]nless otherwise stipulated or ordered by the court, [an expert] disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous ten years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." *Id.*

Under Rule 37(c)(1), "If a party fails to provide information or identify a witness

as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Defendant's first contention is that the Court should strike Domecq as an expert in the litigation because Plaintiff "did not provide a written report, prepared and signed by Domecq, that contained all necessary information." (ECF No. 67 at 7.) Domecq was tasked with preparing a cost of repair estimate based on the scope of work identified by SBSA. (ECF No. 68 at 2.) Defendant argues that Domecq "did not sign the estimate and there is no indication that he even prepared it;" rather the document appears to have been prepared by Thalassa Fuhrmann ("Fuhrmann").[1] (ECF No. 67 at 7.) Defendant claims that Domecq's written report is also deficient in that it does not contain: "(i) a complete statement of the opinions Domecq will express, and the basis for those opinions; (ii) the facts or data Domecq considered in reaching his opinions; (iii) any exhibits that Domecq will use to summarize or support his opinions; and (iv) the principles and methods on which Domecq relied in support of his opinions, and a description of how Domecq applied those principles and methods reliably to the facts of the case." (*Id.* at 8 (internal quotation marks omitted).)

In its Response Opposing Defendant's Motion to Strike (ECF No. 68 ("Response")), Plaintiff argues that Domecq "should not be excluded because omission was substantially justified, and Defendant was not surprised nor prejudiced." (ECF No.

---

[1] Fuhrmann is the owner of a company named Mayhem Restoration & Remodel, which has no affiliation to Domecq or his employer, R3NG, LLC. (ECF No. 67 at 7.) Defendant notes that Domecq's employer may have hired Fuhrmann as an employee, but Plaintiff's Rule 26(a)(1) disclosures continue to list her as being affiliated with Mayhem. (*Id.* at 7 n. 3.)

68 at 2.) Plaintiff contends that Domecq "did not set out all required categories of information in a 'narrative-style' written report because the Xactimate estimate he produced sets forth most, if not all, requirements for disclosure." (*Id.*) According to Plaintiff, "Domecq's Xactimate estimate itself is a report of the facts or data considered in reaching the cost of repair, the complete statement of the expert's opinion, and the basis for those opinions. Domecq's Supplemental Report [ECF No. 68-1 ("Supplemental Report)] simply conveys his estimate in a narrative form and explains what Xactimate does, which is publicly available on the website." (*Id.* at 3 (citations omitted).)[2] In his Supplemental Report, Domecq "explains that he engaged Fuhrmann to input his scope of work into the Xactimate software. Then, Domecq reviewed all data entered into the Xactimate software and in the final Xactimate estimate and adopted in its entirety as his own opinion." (*Id.*)

The Court denies Defendant's request to exclude Domecq, but the scope of Domecq's testimony will be limited. Domecq was given SBSA data—that Defendants also had access to—which he then presented to Fuhrmann to enter into the Xactimate software. Domecq adopted the numbers produced by the software as his opinion. The Court understands Domecq's testimony to amount only to the process of obtaining Xactimate estimates and the estimates themselves. Based on that understanding, the Court finds that the more formal errors in Domecq's expert report are harmless because

---

[2] Defendant objects to Plaintiff's submission of the supplemental expert report, served seven weeks after the applicable deadline and without leave of court. (ECF No. 75 at 1.) The Court recognizes that Defendant's objection is valid, but as the parties have later stipulated that the tardiness of the supplemental report is no longer a live contention in the case (ECF No. 82), the Court confines itself to the question of whether the supplemental report, even if timely, is still inadmissible or inadequate for other reasons.

Defendant also has the SBSA data. Accordingly, Defendant's Motion to Strike is denied to the extent that it seeks to exclude Domecq's testimony. If Domecq's testimony turns out to be more extensive than the Court's understanding of it, Defendant may re-raise its objection at the appropriate time.

**B.     Fronapfel's Expert Disclosure**

Defendant's second contention is that "the Court should exclude Fronapfel as an expert witness at trial because the written report accompanying the disclosures was not prepared by Fronapfel." (ECF No. 67 at 9.) According to Defendant, it appears that Craig Dixon ("Dixon"), another SBSA engineer, prepared the report and Fronapfel merely reviewed it. (*Id.*)

In its Response, Plaintiff argues that "Dixon and other SBSA staff carried out visual observation of the Sunflower property. Following the observation, Fronapfel reviewed the observations with Dixon and assigned Dixon, under his responsible charge of engineering, to prepare the base report of findings and opinions. Fronapfel reviewed and edited the base report, and based on his education, training, experience, and knowledge, Fronapfel edited, reviewed, and ultimately concurred with the findings provided in the final report." (ECF No. 68 at 8 (citations and emphasis omitted).)

Because Plaintiffs appear to be claiming that Fronapfel and Dixon co-authored their report, the Court concludes that Plaintiff may only call one expert, either Fronapfel or Dixon, but not both, to testify as a witness. Thus, Plaintiff is required to choose one author of the SBSA report to testify regarding the SBSA report. Accordingly, Defendant's Motion to Strike is granted to the extent that it claims Plaintiff cannot have two witnesses testify to the same expert opinions, but denied to the extent that it seeks

5

to prevent Plaintiff from choosing between Fronapfel and Dixon.

**C.     Needlessly Cumulative Testimony—Dixon and Fronapfel**

As its third ground for its Motion, Defendant claims that because "Plaintiff has disclosed both Fronapfel and Mr. Dixon as experts who will testify in accordance with the opinions rendered in the SBSA Report[,] . . . Plaintiff is attempting to put forward duplicative testimony." The Court concludes that its resolution of Defendant's second claim above will also resolve the duplicativness issue. Because Plaintiff is required to choose between Fronapfel and Dixon to testify at trial, there will be no duplicative testimony presented regarding their joint opinions.

**D.     Needlessly Cumulative Testimony—Ford**

Defendant's fourth argument is that Ford's testimony will also be "highly duplicative of the planned testimony of Plaintiff's other experts, with one other person designated to testify about repair costs, two other people about the cause of damage to the Property, and three other people about the scope of damage to the Property." (ECF No. 67 at 11.) Ford is a public adjuster, whom Plaintiff designated as a fact witness and a non-retained expert witness. (ECF No. 68 at 10.) The Court cannot properly evaluate duplicativeness solely from an attorney's expert disclosure document alone. Without the experts' reports, the Court cannot be sure that actual duplication will occur. The Court therefore concludes that it would not be appropriate to determine duplicativeness on the present record.

**E.     Attorneys' Fees**

Finally, Defendant claims that the Court should require Plaintiff to pay the

additional attorneys' fees it incurred as a result of Plaintiff's errors. (ECF no. 75 at 3.) The Court has determined that it can best serve the interests of judicial economy by waiting until the end of this lawsuit to rule on this portion of Defendant's Motion. Accordingly, the Court grants Defendant permission to move at the end of these proceedings for the fees it incurred in bringing its Motion to Strike, specifically as to the shortcomings in Domecq's report. See Fed. R. Civ. P. 37(c)(1)(A).

## II. CONCLUSION

For the reasons stated above, the Court ORDERS the following:

1. Defendant's Motion to Strike (ECF No. 67) is GRANTED in part and DENIED in part;

2. Defendant's Motion to Strike (ECF No. 67) is DENIED to the extent that it seeks to have Plaintiff's expert Jason Domecq's testimony excluded;

3. Plaintiff's expert, Jason Domecq's testimony at trial will be limited in scope to the information presented in the Xactimate estimate and the process of obtaining that estimate;

4. Defendant's Motion to Strike (ECF No. 67) is GRANTED to the extent that it seeks to prevent both Craig Dixon and Edward Fronapfel from testifying regarding their joint expert opinions;

5. Plaintiff is ORDERED to choose either Fronapfel or Dixon to testify at trial, but not both;

6. Defendant's Motion to Strike is DENIED to the extent it seeks to exclude David Ford's testimony for duplicativeness; and

7. Plaintiff's Motion for Leave to File Sur-reply in Opposition to Defendant's Motion

to Strike (ECF No. 76) is DENIED as moot.


Dated this 12th day of March, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge