IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2946-WJM-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

   Plaintiff,

v.

OWNERS INSURANCE COMPANY,

   Defendant.

## ORDER OVERRULING PLAINTIFF'S RULE 72(a) OBJECTION

In this insurance dispute case, Plaintiff Sunflower Condominium Association, Inc. ("Plaintiff") brings claims against Defendant Owners Insurance Company ("Defendant") for breach of contract, declaratory judgment, statutory bad faith under Colorado Revised Statutes §§ 10-3-1115 & -1116, and common law insurance bad faith. (*See generally* ECF No. 62.) Now before the Court is Defendant Owners Insurance Company's Motion for Leave to File Amended Answer and Counterclaims (ECF No. 80) ("Motion"). Plaintiff filed a Response in Opposition to Defendant's Motion for Leave to File Amended Answer and Counterclaims (ECF No. 86) ("Response"). Defendant filed a Reply in Support of its Motion for Leave to File Amended Answer and Counterclaims (ECF No. 90) ("Reply"). United States Magistrate Judge Nina Y. Wang issued her Recommendation, finding that Defendant's Motion to Amend should be granted (ECF No. 113) ("Recommendation"). Plaintiff timely filed its Objections to the Recommendation (ECF No. 120) ("Objection") and Defendant filed a Response to

Plaintiff's Objections (ECF No. 124). For the reasons set forth below, Plaintiff's Objections are overruled, Judge Wang's Recommendation is adopted in its entirety, and Defendant's Motion to Amend is granted.

## I. LEGAL STANDARD

"Motions to amend are generally considered nondispositive because they do not dispose of a claim or defense of a party." *Chavez v. Hatterman*, 2009 WL 82496, at *1 (D.Colo. Jan. 13, 2009). "However, courts have been split on whether to treat certain motions to amend as dispositive." *Id.*; *see also Grabau v. Target Corp.*, 2008 WL 179442, at *5 (D. Colo. Jan. 17, 2008) (noting split in this District on motions to amend to add a claim for exemplary damages). Courts in this circuit have found that a magistrate judge's ruling on a motion to amend is nondispositive "particularly where the magistrate judge's order grants leave to amend and does not have the effect of removing any claim or defense." *Cuenca v. Univ. of Kansas*, 205 F. Supp. 2d 1226, 1228 (D. Kan. 2002). "When the magistrate judge's order denying a motion to amend, however, effectively removes a defense or claim from the case, it may well be a dispositive ruling that the district court should review *de novo*." *Id.* Here, because Judge Wang recommends granting Defendant's Motion to Amend, the Court considers her Recommendation to be a nondispositive ruling, subject to the clearly erroneous standard of review.

When reviewing an objection to a magistrate judge's nondispositive ruling, the Court must adopt the ruling unless it finds that the ruling is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *Hutchinson*, 105 F.3d

at 566; *Ariza v. U.S. West Commc'ns, Inc.*, 167 F.R.D. 131, 133 (D. Colo. 1996).

The clearly erroneous standard "requires that the reviewing court affirm unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988). The "contrary to law" standard permits "plenary review as to matters of law," 12 Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 3069 (2d ed., Apr. 2017 update), but the Court will set aside a Magistrate Judge's order only if he or she applied the wrong legal standard or applied the appropriate legal standard incorrectly, *see Wyoming v. U.S. Dep't of Agric.*, 239 F. Supp. 2d 1219, 1236 (D. Wyo. 2002).

## II. BACKGROUND

Plaintiff is a multi-family homeowners association and comprises 23 separate condominium buildings, a clubhouse, and six garage buildings ("the Sunflower Property"). (ECF No. 62 ¶¶ 2, 5.) Sunflower purchased an insurance policy from Defendant to cover the common area property ("Insurance Contract"). (*Id.* ¶ 21.) On September 29, 2014, a wind and hail storm damaged the roofs, gutters, and screens of some of the condominiums and garage structures. (*Id.* ¶¶ 14–15.) According to Plaintiff, the damage to the Sunflower Property is covered under the Insurance Contract. (*Id.* ¶ 16.) Plaintiff claims that its "community management team noticed damage to [the Sunflower] property during a physical inspection of [the Sunflower] Property in the latter part of 2015." (*Id.* ¶ 18.) On December 23, 2015, Plaintiff "submitted an insurance claim to Defendant related to damages resulting from the September 29, 2014 date of loss." (*Id.* ¶ 18.)

Defendant hired a cost-of-repair expert, Gary Stevens ("Stevens"), as an independent adjuster to investigate and report on the loss to the Sunflower Property. (*Id.* ¶ 21, 27.) Meanwhile, Plaintiff engaged Matrix Business Consulting ("Matrix"), represented by David Ford ("Ford"), to adjust its claim for the hailstorm damage. (*Id.* ¶¶ 23–24.) Plaintiff also hired R3NG LLC ("R3NG"), partially owned and represented by Jason Domecq ("Domecq"), to provide a cost-of-repair estimate. (*Id.*) Defendant's adjuster, Stevens, provided a replacement cost value of $857,233.89 and an actual cash value of $590,458.91. (ECF No. 113 at 2.) R3NG provided an estimate of $1.8 million to Plaintiff for the cost of repair. (ECF No. 62 ¶ 25.)

Defendant paid $515,458.91 for the undisputed amount of its claim in August 2016. (*Id.* ¶ 38.) Defendant tendered a supplemental payment of $92,951.05 in April 2017. (ECF No. 113 at 2.) Plaintiff alleges that "Defendant has refused to make further payment." (ECF No. 62 ¶ 41.)

Defendant filed its answer to the Plaintiff's Third Amended Complaint (ECF No. 66) ("Answer") on June 27, 2017. In its Answer, Defendant raised ten defenses. Defendant's second defense is most relevant to the present Motion to Amend. It states,

> Plaintiff's claims in the Third Amended Complaint are barred in whole or in part as a result of Plaintiff's misrepresentations, false statements, and non-cooperation with [Defendant]. Plaintiff not only reported the claim late and thereby prejudiced [Defendant's] investigation, Plaintiff also made misrepresentations and false statements regarding the date when Plaintiff first knew or should [have] known that a hailstorm may have damaged the subject property. . . . Plaintiff has attempted to maximize or inflate the cost of the claim, including by demanding that [Defendant] pay non-covered fees to its property manager

4

and by unnecessarily agreeing to pay its property manager a previously undisclosed contingent fee based on the cost of repair projects.

(ECF No. 66 at 8–9.)

Defendant now seeks leave to file an amended answer and counterclaims, seeking to add two counterclaims for recoupment and breach of contract. (*See* ECF No. 80-1.) Defendant also seeks to add an affirmative defense related to language in the Insurance Contract pertaining to acts of concealment, or fraud. (*Id.*)

### III. ANALYSIS

In its Motion, Defendant claims that "Plaintiff's insurance policy prohibits the insured from misrepresenting or concealing any material fact, or from committing fraud, in making an insurance claim." (ECF No. 80 at 1.) Defendant alleges that it has "recently discovered facts showing that Plaintiff violated this policy provision in two independent ways: (I) by knowingly misrepresenting the date that it discovered the property damage for which it is seeking benefits, and (ii) by submitting a knowingly inflated claim for storm damage." (*Id.* at 1–2.)

Defendant argues that it has not unduly delayed in asserting its counterclaims. (*Id.* at 12.) Defendant claims that "any delay in asserting its counterclaims is justified because [Defendant] has only recently learned of key facts that [Plaintiff] withheld." (*Id.*) Defendant states that, for example, it has "only recently been able to fully discover [the following facts], even though bits and pieces may have been available to [it] earlier in the litigation":

1. Defendant learned during the deposition of Messrs. Ford and Domecq that they

have "a *personal* financial stake in the outcome of the litigation." (*Id.* at 13 (emphasis in original).) Both of them admitted that these incentives make them biased in favor of Plaintiff. (*Id.*)

2. Stevens only recently provided Defendant with his expert assessment that the number and degree of baseless charges in the R3NG estimate led him to believe that the estimate was intentionally inflated. (*Id.*) Moreover, Defendant only recently had the opportunity to depose Domecq regarding Stevens's analysis. During this deposition, Domecq admitted that certain charges were improper and that he could not justify these errors. (*Id.*)

3. During these recent depositions, Defendant discovered that Plaintiff takes measures to ensure it gets the best deal when hiring contractors to perform repairs with its own funds, but that Plaintiff took no similar measures when selecting R3NG to repair the hailstorm damage. (*Id.*)

4. Defendant could not confirm until Plaintiff's deposition that Plaintiff is seeking to charge nearly three times more per roof than it paid when it re-roofed the very same buildings in 2007. (*Id.*) Additionally, in these depositions, Plaintiff itself admitted for the first time that the huge difference between the re-roofing costs in 2007 and R3NG's asserted costs in 2017 "cannot remotely be explained by cost inflation." (*Id.*)

5. "Ms. Fricks, an active member of Plaintiff's board, testified that she knew by no later than October 30, 2014 that the September 2014 storm was 'bad'—bad enough to total her car that was parked at the property when the storm occurred.

In fact, Ms. Fricks made a claim to her automobile insurer for damage caused by the September 2014 storm." (*Id.* at 11.)

Moreover, Defendant argues that allowing it to assert counterclaims at this time would not unduly prejudice Plaintiff. (*Id.*) Defendant argues that "[n]o trial date has been set in this case, and the final pre-trial conference is not scheduled to take place [for three months]." (*Id.*) Furthermore, Defendant contends, "the counterclaims arise out of facts and testimony from Plaintiff's own witness—facts that Plaintiff[] knew or should have known all along." (*Id.* at 13–14.) Additionally, Defendant argues that its proposed counterclaims are not futile and are not intended to harass Plaintiff or cure previously deficient pleadings. (*Id.* at 14–15.)

Judge Wang determined that because Defendant filed its Motion after the expiration of the deadline for amendment of pleadings and joinder of parties as specified in their scheduling order, a two-step inquiry was necessary to assess Defendant's Motion. (ECF No. 113 at 4.)

First, the court reviews whether the moving party can demonstrate good cause pursuant to Federal Rule of Civil Procedure 16 (b). (*Id.* (citing *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Assoc.*, 771 F.3d 1230, 1242 (10th Cir. 2014)).) "In practice, this standard requires the movant to show that the scheduling deadlines cannot be met despite the movant's diligent efforts." (ECF No. 113 at 4 (quoting *Gorsuch*, 771 F.3d at 1240).) "This burden is satisfied, for example, when a party learns of new information in a deposition, or that the governing law has subsequently changed." (ECF No. 113 at 4 (citing *Gorsuch*, 771 F.3d at 1240).)

Next, the court weighs whether the amendment should be allowed pursuant to Rule 15(a). (ECF No. 113 at 4 (citing *Gorsuch*, 771 F.3d at 1242.) "The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." (ECF No. 113 at 5 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).) A general presumption exists in favor of allowing a party to amend its pleadings (ECF No. 113 at 5 (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).)[1]

Judge Wang found that Defendant has good cause to satisfy Rule 16(b)(4). (ECF No. 113 at 14.) In her Recommendation, she explained "[d]rawing on [Stevens's] opinions, the 2007 roof repair estimates, and Ms. Fricks's auto insurance claim, [] [Defendant] had a basis in June 2017 to add to its Answer an affirmative defense regarding misrepresentation, but . . . [Defendant] did not learn of the corroborating information, identified above, to justify its proposed affirmative counterclaim until at least July 2017, well after the March 20, 2017 deadline to amend pleadings and the June 2017 deadline to respond to Plaintiff's operative complaint." (ECF No. 113 at 13–14.) Judge Wang clarifies that "[w]hile [Defendant] argues that it faces a higher pleading standard for asserting concealment and misrepresentation as a counterclaim than as an affirmative defense, this court is more persuaded that [Defendant] did not have adequate information to conclude that Plaintiff's conduct was intentional until

---

[1] Judge Wang also noted that here, Defendant claims that the proposed counterclaims are compulsory under Rule 13 and that if it cannot amend its answer to assert these counterclaims it may be barred from asserting them in any future litigation. (ECF No. 113 at 5; ECF No. 80 at 2.)

September 2017." (ECF No. 113 at 14.) Additionally, the Recommendation states, "[t]he record does not lead this court to conclude that [Defendant] was dilatory or failed to act in good faith through the discovery process." (*Id.*)

In its Objection, Plaintiff argues that Defendant had adequate information to assert its counterclaims before September 2017. (ECF No. 120 at 2.) Plaintiff's contention is based on Stevens's testimony that he "directly informed [Defendant] during the claims process that the estimate was intentionally inflated." (*Id.*) According to Plaintiff, this shows that Defendant "had sufficient information to support its counterclaim prior to this litigation—it simply has acquired additional information more recently in support of its counterclaims." (*Id.*) Plaintiff also claims that Defendant "could have discovered the relevant information regarding discrepancies between the estimates at any time between when [Stevens] informed [Defendant] of his opinions and the start of this litigation had it attempted in any way to contact [Plaintiff] regarding the R3NG estimate." (*Id.* (emphasis omitted).)

The Court is not persuaded by Plaintiff's argument. The Court does not necessarily agree that Defendant lacked sufficient information to plead counterclaims based solely on Stevens's statement to Defendant that Plaintiff's estimate was intentionally inflated. However, the Court recognizes that an attorney in good faith might make that judgment. The Court thus concludes in these particular circumstances that Defendant should not be penalized for its attorney's efforts to be conscientious about pleading standards. Therefore, the Court finds no clear error with Judge Wang's reasoning and agrees that Defendant has shown good cause to satisfy Rule 16(b)(4).

Turning to Rule 15(a), Judge Wang considered whether Defendant unduly

delayed in seeking the amendment, whether allowing the amendment would unfairly prejudice Plaintiff, and whether the amendment would be futile.

In assessing whether a party has unduly delayed in seeking to amend, courts focus primarily on the reasons for the delay. (ECF No. 113 at 15; *see also Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006). Plaintiff here claims that Defendant knew or should have known of the facts upon which the counterclaims are based well before it filed the instant motion. (ECF NO. 86 at 14.)

Judge Wang found that "[Defendant] has sufficiently explained why it did not move to amend its Answer prior to September 18, 2017. The evidence [Plaintiff] references appears sufficient to support the affirmative defense that [Defendant] added to its Answer in June 2017, but not necessarily sufficient to support a counterclaim that includes an element of Plaintiff's state of mind." (ECF No. 113 at 16.) Judge Wang further explains, "while [Defendant] knew [based on] the opinion[s] of [Stevens], and a second expert, Mr. Plitt, that the R3NG Estimate was inflated, [Defendant] did not have the opportunity to inquire into the discrepancies of the estimates or the bases of its experts' opinions until August 15, 2017, when it deposed the corporate representative of R3NG." (*Id.*) Furthermore, Judge Wang points out that "[n]otably, [Plaintiff] does not contend that [Defendant] is responsible for delaying the depositions of [Plaintiff's experts]." (*Id.*) Finally, Judge Wang stated that she does "not view Defendant's actions as a calculated attempt to prejudice [Plaintiff], as [Plaintiff] suggests, but rather as an attempt to satisfy [Defendant's] obligations under [the] Federal Rules of Civil Procedure and the language of the contract . . . . Accordingly, [she found] no undue delay to preclude amendment." (*Id.* at 18.)

Plaintiff objects to Judge Wang's finding on the basis that "the Recommendation indicates that the facts necessary to support the counterclaims are different from the facts necessary to support the earlier-pled affirmative defenses because the counterclaims include an element regarding Sunflower's state of mind that the affirmative defenses did not." (ECF No. 120 at 3.) Plaintiff argues that "the affirmative defenses asserted by [Defendant] contained this additional *mens rea* element as well. Specifically, [Defendant's] affirmative defense alleged 'misrepresentation and false statements' regarding the date of discovery of the damage. This defense contained, as an element, that [Plaintiff] knew that the representation was false." (*Id.*)

The Court does not find this argument convincing. The Court has an interest in discouraging both undue delay *and* pleadings filed without adequate factual bases. Thus, while Plaintiff may be correct about Defendant's affirmative defenses and proposed counterclaims being comprised of some of the same elements, the Court recognizes that this is a judgment call that attorneys must make and will not in these circumstances penalize an attorney for his or her efforts to properly and in good faith comply with the pleading standards of this Court. Therefore, the Court adopts Judge Wang's Recommendation on this issue and finds no undue delay to preclude amendment.

Judge Wang next considered whether allowing Defendant to amend its Answer would prejudice Plaintiff. Prejudice in this context arises when "the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971). This occurs most often "when the amended claims arise out of a subject matter different

from what was set forth in the complaint and raise significant new factual issues."

Judge Wang found no prejudice to preclude amendment, because

> the legal theory underlying the counterclaims was present as of June 27, 2017, when [Defendant] filed the operative Answer. The factual issues associated with the counterclaims have been present since at least July 28, 2017 when [Defendant] (1) "disclosed an expert report by Mr. Plitt focused entirely on the alleged over-inflation of [Plaintiff's] claim and opining that this over-inflation may bar [Plaintiff's] recovery based on the [Insurance Contract's] fraud clause," and (2) "provided [Plaintiff] with the rebuttal expert report of [Stevens]," which "highlighted alleged examples of overinflation in the R3NG/Ford estimate, and opined that the R3NG/Ford estimate was likely intentionally inflated."

(ECF NO. 113 at 18–19.) Judge Wang also noted, "[Plaintiff] does not articulate what discovery, not already in its custody, possession or control, it would seek, and finds this omission significant considering the information most relevant to the proposed amendment is within Plaintiff's rather than Defendant's control." (*Id.* at 19.)

Plaintiff raises two objections to Judge Wang's finding on this issue. First, plaintiff "objects to the Recommendation's conclusion that [Defendant] did not have sufficient evidence to support its proposed counterclaims prior to its filing of its Motion, because that conclusion is necessarily inconsistent with the [] conclusion in the Recommendation that [Plaintiff] is not prejudiced by allowing [Defendant's] newfound counterclaims at this stage in the process." (ECF No. 120 at 4.) Second, Plaintiff objects to Judge Wang's finding of no prejudice because "it also ignores the fact that [Plaintiff] has not had any opportunity to depose [Defendant] or [Defendant's] experts regarding the basis for the proposed counterclaims." (*Id.* at 5.)

The Court overrules both of these objections. The Court finds no contradiction

12

between Judge Wang's finding that Defendant did not have sufficient evidence to support its proposed counterclaims prior to filing its Motion, and her finding that Plaintiff knew about the facts underlying the counterclaims since at least July 27, 2017.  The affirmative defenses in Defendant's operative Answer already fully put Plaintiff on notice that the alleged fraud and misrepresentation would be at issue in the lawsuit.  Insofar as any possible prejudice arising out of an alleged lack of notice, allowing Defendant to amend its Answer to include the counterclaims on these facts will serve only to put Plaintiff on notice that Defendant is seeking damages on the basis of facts and theories it was not only previously well aware of, but had also been actively defending itself against in this case.  Therefore the Court finds no clear error in Judge Wang's reasoning and adopts her recommended finding of no prejudice to preclude amendment.

Finally, Judge Wang considered whether the amendment would be futile.  The court may deny a motion for leave to amend as futile "when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."  *E.Spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (citation omitted).  "[Plaintiff] argues that the proposed amendments do not state or support a claim for common law fraud.  [Defendant] asserts in its Reply that the theory of recovery is not common law fraud, but breach of the Insurance Contract, specifically the 'Concealment, Misrepresentation or Fraud' provision of the Insurance Contract."  (ECF No. 113 at 19.)  Judge Wang found that the proposed amendments were not futile as to a breach of

13

contract claim.[2]

Plaintiff did not object to Judge Wang's finding regarding futility, so the Court adopts Judge Wang's determination that Defendant's amendment will not be futile to the breach of contract claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objection (ECF No. 120) is OVERRULED;

2. Judge Wang's Recommendation (ECF No. 113) is ADOPTED in its entirety;

3. Defendant's Motion for Leave to Amend (ECF No. 80) is GRANTED;

4. The Court ACCEPTS Defendant's Amended Answer and Counterclaims (ECF No. 80-1) as filed; and

5. Counsel are directed to jointly contact the Chambers of Judge Wang no later than **April 16, 2018** in order to schedule a Status Conference or such other proceeding as Judge Wang deems appropriate to advance this litigation going forward.

Dated this 12th day of April, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge

---

[2] Judge Wang noted that "Defendant proposes a second counterclaim for Recoupment, which neither party addresses within the futility context." (ECF No. 113 at 22.) Because Plaintiff did not challenge this claim, it will stay in the case.