**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-2946-WJM-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit
corporation,

      Plaintiff,

v.

OWNERS INSURANCE COMPANY,

      Defendant.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

---

      In this insurance dispute, Plaintiff Sunflower Condominium Association (Plaintiff)

brings claims for breach of contract, declaratory judgment, statutory bad faith under

Colorado Revised Statutes §§ 10-3-1115 & -1116, and common law insurance bad faith

against Defendant Owners Insurance Company (Defendant).

      Now before the Court are the parties' cross motions for summary judgment.

Plaintiff's Motion for Partial Summary Judgment Regarding Defendant's Second and

Fifth Affirmative Defenses (ECF No. 93 ("Plaintiff's Motion")) seeks judgment as a

matter of law against Defendant's affirmative defenses that Plaintiff submitted a

fraudulent claim and therefore is not allowed to collect any benefits it may otherwise be

due. (ECF No. 93 at 1.) However, after the filing of Plaintiff's Motion, with the Court's

leave (ECF No. 134), Defendant filed an Amended Answer (ECF No. 136), which

recharacterized its fraud affirmative defenses as counterclaims. Because the

counterclaims are based on the same facts as the affirmative defenses, the Court

construes Plaintiff's motion for partial summary judgment on Defendant's second and fifth affirmative defenses as a full motion for summary judgment on Defendant's counterclaims.  Also before the Court is Defendant's Motion for Summary Judgment (ECF No. 94 ("Defendant's Motion")), which seeks judgment as a matter of law against all claims pled in this action by the Plaintiff.  For the reasons set forth below, Plaintiff's construed Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

## I. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

The following facts are undisputed, except where attributed to one party or another, or to specifically cited evidentiary materials.

Plaintiff is a multi-family homeowners association which manages a property complex comprised of 23 separate condominium buildings, a clubhouse, and six garage buildings ("the Sunflower Property"). (ECF No. 62 ¶¶ 2, 5.) Sunflower purchased an insurance policy from Defendant to cover the common area property ("Insurance Contract"). (*Id.* ¶ 21.) On September 29, 2014, a wind and hail storm damaged the roofs, gutters, and screens of some of the condominiums and garage structures. (*Id.* ¶¶ 14–15.) According to Plaintiff, the damage to the Sunflower Property is covered under the Insurance Contract. (*Id.* ¶ 16.) Plaintiff claims that its "community management team noticed damage to [the Sunflower] property during a physical inspection of [the Sunflower] Property in the latter part of 2015." (*Id.* ¶ 17.) On December 23, 2015, Plaintiff "submitted an insurance claim to Defendant related to damages resulting from the September 29, 2014 date of loss." (*Id.* ¶ 18.)

Defendant hired a cost-of-repair expert, Gary Stevens ("Stevens"), as an independent adjuster to investigate and report on the loss to the Sunflower Property. (*Id.* ¶ 21, 27.) Meanwhile, Plaintiff engaged Matrix Business Consulting ("Matrix"), represented by David Ford ("Ford"), to adjust its claim for the hailstorm damage. (*Id.* ¶¶ 23–24.) Plaintiff also hired R3NG LLC ("R3NG"), partially owned and represented by Jason Domecq ("Domecq"), to provide a cost-of-repair estimate ("R3NG/Ford estimate"). (*Id.*) Defendant's adjuster, Stevens, provided a replacement

cost value estimate of $857,233.89 and an actual cash value estimate of $590,458.91. (ECF No. 113 at 2.)[1]  R3NG provided an estimate of $1.8 million to Plaintiff for the cost of repair.  (ECF No. 62 ¶ 25.)

Defendant paid $515,458.91 to Plaintiff in August 2016.  (*Id.* ¶ 38.)  Plaintiff claims that this was the undisputed amount of the claim (*id.*), while Defendant claims that this amount represents the actual cash value of the August 2, 2016 estimate less the $75,000 deductible under the policy (ECF No. 99 at 7).  Defendant tendered a supplemental payment of $92,951.05 in April 2017.  (ECF No. 113 at 2.)  Plaintiff alleges that "Defendant has refused to make further payment" after the April 2017 payment.  (ECF No. 62 ¶ 41.)

Plaintiff sent Defendant its First Supplemental Disclosures, which included documentation that one of Plaintiff's board members had filed an auto insurance claim for damage to her vehicle resulting from the 2014 hailstorm.  (ECF No. 93 at 4, ¶ 8.)  In its discovery responses, Plaintiff initially claimed that it discovered the damage to the property in December 2015.  (*Id.* ¶ 9.)  Plaintiff states that it "subsequently amended this interrogatory answer voluntarily" after it learned that the material was incomplete or incorrect.  (*Id.*)  Defendant disputes "Plaintiff's assertion that it 'voluntarily' amended its answer.  After [Defendant] discovered documentation suggesting that Plaintiff's December 18 date of discovery was false, [Defendant] served Plaintiff with additional

---

[1] Defendant disputes Plaintiff's claim that these estimates were produced by Gary Stevens on March 13, 2016 for Defendant.  (ECF No. 99 at 6.)  According to Defendant, these estimates were produced by Donna Cassenese on August 2, 2016, who worked for Catastrophe Specialist, Inc.  (*Id.* at 6–7.)  Both Stevens and Ms. Cassanese worked for Catastrophe Specialist, Inc.

discovery requests, including a request that Plaintiff admit that Plaintiff "discovered the hail damage more than two months before the date [claimed in its] response to [Defendant's] Interrogatory 6." (ECF No. 99 at 8, ¶ 9.) According to Defendant, Plaintiff denied this request for admission and, on the same day, served its revised interrogatory answer regarding the date of discovery. (ECF No. 99 at 9, ¶ 9.)

In its Answer, Defendant raises counterclaims for recoupment and breach of contract. (ECF No. 136 at 18–20.) The Insurance Contract contains a fraud clause which states, "We will not pay for any loss or damage in case of: (1) Concealment or misrepresentation of a material fact; or (2) fraud committed by you or any other insured [] at any time and relating to coverage under this policy." (*Id.* at 9 ("fraud clause").) Defendant claims that Plaintiff violated the fraud clause in two main ways: (1) "plaintiff misrepresented the date when Plaintiff first knew or should have known that a hailstorm may have damaged the subject property" (*id.*); and (2) "plaintiff has attempted to maximize or inflate the cost of the claim" (*id.* at 10).

### III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

As construed by the Court, Plaintiff moves for summary judgment seeking judgment as a matter of law against Defendant's counterclaims. (*See* ECF No. 93.) Plaintiff raises two main arguments in support of dismissing Defendant's counterclaims. First, Plaintiff maintains that "Defendant cannot prove that the date [Plaintiff] discovered the damage was false, or that [Plaintiff] intended [Defendant] to take any specific action as a result of the date of discovery." (ECF No. 93 at 6.) Second, Plaintiff contends that "Defendant cannot prove that the R3NG/Ford estimate

was a material fact or that [Defendant] was ignorant of its falsity."  The Court will

consider each of Plaintiff's arguments in turn.  Defendant countered these arguments in

their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment.  (ECF

No. 99 ("Defendant's Response").)  Plaintiff then filed a Reply in support of Motion for

Partial Summary Judgment Regarding Defendant's Affirmative Defenses.  (ECF No.

112 ("Plaintiff's reply").)

## A.    Plaintiff's Arguments Regarding Date of Discovery

Plaintiff argues that

> Under common law, 'a plaintiff seeking to prevail on a fraud
> claim must typically establish five elements: (1) that the
> defendant made a false representation of a material fact; (2)
> that the one making the representation knew it was false; (3)
> that the person to whom the representation was made was
> ignorant of its falsity; (4) that the representation was made
> with the intention that it be acted upon; and (5) that the
> reliance resulted in damage to the plaintiff.

(ECF No. 93 at 6.)  Plaintiff argues that Defendant cannot prove the first, second, or

fourth elements of a fraud claim for two reasons.  (*Id.*)

First, Plaintiff contends, Defendant cannot prove "that [Plaintiff] discovered the

damage on a different date, and therefore that [Plaintiff's] representation regarding its

discovery is false."  (ECF No. 93 at 7.)  Plaintiff argues that Defendant "has provided

evidence that [Plaintiff] could have discovered the damages earlier, but not that

[Plaintiff] actually discovered the damages earlier and misrepresented the date of

discovery to [Defendant]."  Plaintiff says that the only evidence Defendant "has

regarding the allegedly 'false' date of discovery is an interrogatory response that was

subsequently voluntarily amended, and information that someone at Sunflower

submitted an insurance claim for their car following the date of loss." (*Id.*)  Thus, Plaintiff further argues that it "should not be prejudiced for supplementing any discovery responses when it learns that 'in some material respect, the information is incomplete or incorrect.'" (*Id.* at 7 (quoting Fed. R. Civ. P. 26(e).)

Second, Plaintiff claims that Defendant cannot prove "that [Plaintiff] intended [Defendant] to take any action with regards to the date of discovery." (*Id.*)  According to Plaintiff, "the date that the damage was discovered is entirely immaterial to the claim—it has nothing to do with the date of loss and whether the claim is covered.  It is simply the date that the damage was discovered." (*Id.*)

Tenth Circuit and Colorado courts have found that fraud clauses, like the one in this Insurance Contract, are enforceable and void the entire claim, not just the portion to which the fraud pertains.  *American Diver's Supply & Mfg. Corp. v. Boltz*, 482 F.2d 795, 797–98 (10th Cir. 1973); *Martinez v. Hartford Underwriters Ins. Co.*, 2014 WL 2016569, at *2 (D. Colo. May 15, 2014).  In cases where there is a fraud clause in the contract, the Tenth Circuit finds

> the common law pre-contract cases . . . to be inapplicable, because the fraud clause intentionally imposes different standards of responsibility and damages—absolute honesty and forfeiture of *all* benefits of the policy and not merely unintended benefits—which removes this case from situations where a party seeks to rescind a contract without such a clause and thus must meet all of the requisites of common law fraud.

*American Diver's*, 482 F.2d at 797 (emphasis in original).  In this District, under the fraud clause, the Defendant needs to prove three elements.  First, defendant must prove that the plaintiff misrepresented or omitted some fact.  *Martinez*, 2014 WL

2016569, at *2.  Second, the insurer needs to show that "the misrepresentations or omissions were "material."  *Id*.  And finally, a defendant needs to show an "intent to deceive on the part of the insured."  *Id.*

Plaintiff tries to argue that Defendant is required to prove the fourth element of common law fraud—namely, that the person to whom the representation was made was ignorant of its falsity.  Plaintiff bases this claim on language from *American Diver's*, 482 F.2d at 797, which states, "if the law. . . were to require that the insurer demonstrate that it has been misled to its prejudice by the fraud, the policy provision would be virtually worthless."  Plaintiff claims that the Tenth Circuit's statement merely reiterates that where there is a fraud clause in the insurance contract, the Defendant does not need to prove detrimental reliance in its fraud clause claim, but still has to prove ignorance.  (ECF No. 112 at 7.)

In accordance with Tenth Circuit case law, the parties agree that Defendant does not have to prove detrimental reliance in a fraud clause claim.  However, the Court is not convinced that ignorance is an element of the fraud clause claim.  Defendant could have brought this claim as a Plaintiff in an affirmative lawsuit, before paying Plaintiff any money under the claim, seeking declaratory judgment voiding the contract due to violation of the fraud clause.  In that scenario, Defendant would not be required to establish detrimental reliance.  In order to bring such a claim affirmatively, Defendant would necessarily have had to be aware of the falsity of Plaintiff's actions.  Accordingly, ignorance would not be an element in an affirmative lawsuit brought by Defendant on the violation of the fraud clause.  It therefore follows that it is not an element when the same claim is brought as a counterclaim in this action.  Accordingly, the Court

8

disagrees with Plaintiff and does not consider ignorance to be an element of the fraud clause claim in this case.

The Court finds that Plaintiff's first argument regarding the date of discovery—namely, that Defendant cannot prove that the date Plaintiff discovered the damage was false—does not undermine Defendant's counterclaims as a matter of law. As Defendant points out, Plaintiff initially claimed it discovered the hail damage to the property on December 18, 2015, but later revised its response to state that it discovered the damage "in the fall of 2015." (ECF No. 99 at 22.) Plaintiff argues that it should not be penalized for "supplementing any discovery material." (ECF No. 93 at 7.) However, the issue still stands that Plaintiff may have initially intentionally misrepresented the date of discovery and if Plaintiff did misrepresent this fact, Plaintiff cannot avoid liability under the fraud clause simply by interjecting a material truthful statement into the record at a later date.

Defendant's Response points to other evidence suggesting that Plaintiff misrepresented the date it discovered the hail damage. First it refers to an e-mail sent by Plaintiff's property manager to Plaintiff's entire board of directors on April 27, 2015 which included "a one-page work proposal from R3NG that explicitly informed Plaintiff that its roofs had hail damage." (ECF No. 99 at 22.) Defendant also points out that one of Plaintiff's directors filed an insurance claim in October 2014 based on damage to her car that was parked at the Sunflower Property.

Defendant's Response also includes facts to show that the misrepresentations may be material. The Tenth Circuit has held that "[t]he materiality of a misrepresentation is a mixed question of law and fact that under most circumstances

9

should be determined by the trier of fact." *Turley v. State Farm Mut. Auto. Ins. Co.*, 944 F.2d 669, 672 (10th Cir. 1991). "However, materiality 'can be decided as a matter of law if reasonable minds could not differ on the question.'" *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998); *Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982). Thus, the question is whether reasonable minds could differ as to the materiality of the misrepresentations. *Wagnon*, 146 F.3d at 768. "[T]he subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time." *Id*. Thus, a misrepresentation or omission is material whenever "a reasonable insurance company, in deciding its course of action, would attach importance" to the matter. *Id.* at 768–69.

Here, Defendant claims that "Plaintiff's misrepresentation regarding the date of discovery is unquestionably material." (ECF No. 99 at 23.) According to Defendant, "[i]n a case like this one, where the insured fails to report a loss for a significant period of time, the insurer can disclaim coverage based on the late notice only if it can prove, *inter alia*, that the insured acted unreasonably in failing to promptly report the loss. And whether the insured's delay was unreasonable depends, in large part, on how soon after discovering the loss the insured reported it." (*Id.* at 23–24 (citing *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644 (Colo. 2005)).) The Court is persuaded that the date the damage was actually discovered is "reasonably relevant" to Defendant's investigation, given that it forms the basis of Defendant's late notice claim. It is therefore possible that "reasonable minds could differ" regarding the materiality of the

misrepresentations.

Plaintiff's second argument regarding the date of discovery is that Defendant cannot prove that Plaintiff intended Defendant to take any specific action as a result of the date of discovery. (ECF No. 93 at 6.) Defendant argues that it has sufficient evidence "showing that Plaintiff misrepresented the date of discovery with the intent to deceive." (ECF No. 99 at 24.)

According to the Tenth Circuit, "so long as [Plaintiff's] misrepresentations were made knowingly and deliberately, the intent to deceive the insurer will be implied." *Wagnon*, 146 F.3d at 771. Defendant points to four main pieces of evidence which suggest that Plaintiff knowingly and deliberately misrepresented the date it discovered the hail damage: (1) none of Plaintiff's representatives asked the property manager when she discovered the damage and Plaintiff has never provided any basis for its original response regarding the date of discovery; (2) an active member of Plaintiff's board of directors knew by October 30, 2014 that the September 2014 storm hit the Sunflower Property and filed an insurance claim for her vehicle; (3) the entire board of directors received a single-page work proposal from R3NG pointing out the presence of hail damage to the property; and (4) during the summer of 2015, Domecq told Plaintiff's property manager over the phone about hail damage to the Sunflower Property. (ECF No. 99 at 24–25.)

Based on this evidence, the Court determines that a reasonable jury could find that Plaintiff knowingly and deliberately misrepresented the date of discovery to Defendant, implying that Plaintiff acted with the intent to deceive.

Defendant has provided sufficient evidence that a reasonable jury could find that

Plaintiff misrepresented facts to Defendant, that these misrepresentations were material, and that Plaintiff intended to deceive Defendant by its misrepresentations. Since the Court finds that a reasonable jury could return a verdict for Defendant, a genuine issue of material fact remains as to Defendant's counterclaim based on the fraud clause claim arising from Plaintiff's stated date of discovery. Accordingly, the Court cannot grant summary judgment as to this claim and must deny Plaintiff's Motion.

**B.    Plaintiff's Arguments Regarding the R3NG/Domecq Estimate**

Plaintiff also asks the Court to grant summary judgment dismissing Defendant's counterclaim based on Plaintiff's alleged inflation of the cost of repair estimate. (ECF No. 93 at 7.) Specifically, Plaintiff argues that "Defendant cannot prove that the R3NG/ Ford estimate was a material fact or that [Defendant] was ignorant of its falsity." (*Id.*) The Court will consider each argument in turn.

Plaintiff first argues that Defendant cannot prove that the R3NG/Ford estimate was a material fact. As stated above and in Plaintiff's Motion, "[a] fact is material when a reasonable insurance company, in deciding its course of action, would attach importance to the matter." (*Id.* at 8 (quoting *Martinez*, at *2).) Plaintiff goes on to point to various examples showing that "there is no doubt that [Defendant] did not attach any importance to the R3NG/Ford estimate, nor did they intend to." (*Id.* at 8.)

Plaintiff uses the wrong standard to support its materiality argument. The correct standard is an objective one, considering whether a *reasonable* insurance company would attach importance to the matter. The standard is not a subjective one, as Plaintiff assumes—the standard does not consider whether this particular insurance company

attached importance to the matter in these particular circumstances.

Thus, because a reasonable jury could find that a reasonable insurance company could attach importance to the insured's cost of repair estimate and Plaintiff fails to provide any evidence to the contrary, this argument fails.

The Court now turns to Plaintiff's second argument regarding the R3NG/Ford estimate, namely that Defendant cannot prove that it was ignorant of the estimate's falsity. Here, Plaintiff argues that "[Defendant] was aware, since before it paid the undisputed payment, that it did not trust the estimate submitted by [Plaintiff]." (ECF No. 93 at 9.) However, the Court reiterates that ignorance is not an element of a claim arising from the fraud clause in an insurance contract. Thus, Plaintiff's second argument regarding the R3NG/Ford estimate also fails.

The Court concludes that a genuine issue of material fact remains as to Defendant's counterclaim based on the fraud clause arising from the R3NG/Ford estimate. Accordingly, the Court cannot grant summary judgment as to this claim and must deny Plaintiff's Motion.

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant also moves for summary judgment. (*See* ECF No. 94.) Specifically, Defendant seeks judgment as a matter of law with respect to the following: (1) Plaintiff's breach of contract claim (ECF No. 94 at 6), (2) Plaintiff's statutory and common law bad faith claims (*id.*), and (3) Plaintiff's claim that Defendant is liable for Plaintiff's "special projects fee" (*id.* at 23). The Court considers Defendant's request for summary judgment against each claim successively.

13

**A.      Defendant's Motion for Summary Judgment with respect to Plaintiff's Breach of Contract Claim**

Defendant asks the Court to dismiss Plaintiff's breach of contract claim pursuant to the notice prejudice rule.  The Colorado Supreme Court has

> adopted a two-step approach to trial court implementation of the notice-prejudice rule.  This approach requires a preliminary determination of whether an insured's notice was timely.  Such a determination should include an evaluation of the timing of the notice and the reasonableness of any delay.  Once a court has determined that an insured's notice was untimely and that the delay was unreasonable, it should then turn to the issue of whether the insured was prejudiced by such untimely notice

*Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644 (Colo. 2005).

Here, Defendant argues that "Plaintiff had an obligation to give [Defendant] 'prompt notice' of any loss for which Plaintiff seeks benefits.  Plaintiff was also required to give [Defendant] 'as soon as possible, [] a description of how, when and where the loss or damage occurred.'  Plaintiff alleges that the loss occurred on September 29, 2014.  Yet Plaintiff did not report the loss until almost 15 months later, on December 20, 2015."  (ECF No. 94 at 18 (citations omitted).)

1.     Unreasonable Delay

Defendant states, and the Court agrees, that "[i]n assessing the reasonableness of a delay, courts in Colorado employ an objective standard.  [] Thus, so long as a reasonable person would have discovered and reported the loss before Plaintiff did, Plaintiff's subjective reasons for failing to report it sooner are irrelevant."  (*Id.* at 19.)  According to Defendant, "Plaintiff squandered at least four chances to discover the loss and report it sooner."  (*Id.*)  First, Ms. Fricks, one of Plaintiff's board members, admitted

that she knew that the September 2014 storm hit the Sunflower Property and "that the storm was 'bad.'" (*Id.* at 20.)  Second, Ms. Countryman received a one-page work proposal from R3NG on April 27, 2015 that explicitly noted the presence of hail damage to the roofs of the property. Ms. Countryman forwarded this e-mail to Plaintiff's board of directors.  (*Id.*)  Third, during the summer of 2015, Domecq told Ms. Countryman that "there was some damage at [the Sunflower Property] and that maybe it was an insurable loss." (*Id.* at 21.)  And finally, Ms. Countryman testified that she noticed the "obvious" damage when standing on the sidewalk at the property.  (*Id.*)

Plaintiff filed a Response in opposition to Defendant's Motion for Summary Judgment.  (ECF No. 101 "Plaintiff's Response".)[2]  Plaintiff argues that there are disputed issues of material fact that preclude summary judgment on Plaintiff's breach of contract claim.  (*Id.* at 20.)  Specifically, Plaintiff claims that the totality of the evidence shows that Plaintiff gave proper and prompt notice of the claim.  (*Id.* at 21.)

Plaintiff argues that it reported the claim promptly after discovering the loss. Plaintiff claims that it "could not have given notice earlier, because it did not know about the loss earlier." (*Id.* at 22.)  According to Plaintiff, Ms. Countryman did not discover the loss until September 24, 2015.  (*Id.*)  Plaintiff agrees that R3NG noticed hail damage in April 2015, while inspecting a gutter leak.  (*Id.*)  However, Plaintiff claims that "Ms.

---

[2] In addition to this response, Plaintiff also filed an Objection to Defendant's Summary Judgment Evidence Related to Expert Witnesses.  (ECF No. 100.)  There is no provision in Rule 56, this District's local rules, or the undersigned's Revised Practice Standards for such an additional and separate filing.  Plaintiff has, in effect, granted itself several extra pages with which to oppose Defendant's motion for summary judgment, a result the Court cannot abide. For this reason, Plaintiff's additional summary judgment response filing, ECF No. 100, is stricken.

Countryman did not notice this tangential reference to hail damage because of the urgent nature of the gutter leak, which was the primary purpose of [Plaintiff] engaging R3NG at that time." (*Id.*)

Defendant addresses this argument in its reply brief. (ECF No. 114 "Defendant's Reply".) Defendant contests Plaintiff's assertion that its duty to give prompt notice is triggered only after the insured obtains notice of the loss. (ECF No. 114 at 17.) Defendant argues that such a subjective-knowledge requirement would "allow a policy holder to file a claim years or even decades after a loss, so long as the policyholder kept its head sufficiently buried in the sand in the interim." (*Id.*)

The Court agrees that the proper analysis here requires an objective reasonableness test. As the Colorado Supreme Court explains, "[t]he duty to give notice under a [] policy arises when an insured, *with reasonable diligence*, can ascertain that the alleged tortfeasor is undersigned." *Clementi*, 16 P.3d at 226 (emphasis added). Here, although Defendant claims that Ms. Countryman did not read R3NG's e-mail regarding the hail damage, in the Court's view a reasonably diligent property manager would have read the e-mail at the time it was received. Thus, once it received the April 2015 e-mail, Plaintiff was on notice of the damage and the prompt notice provision was triggered.

Moreover, Plaintiff asserts that Defendant's own documents show that prompt notice was not an issue, and Defendant is therefore estopped from asserting that Plaintiff's notice was not prompt. (ECF No. 101 at 24.) Plaintiff points to an e-mail from Janice Bernard, the adjuster handling the claim for Defendant, to Stevens, stating, "It was determined that the condo association has no on-site property manager [*sic*] and

this was the reason for delay in getting it reported . . . . due to the reasoning for the late notice, no reservation of rights is necessary." (*Id.* at 25.)

In its Reply, Defendant argues that Plaintiff cannot prove that Defendant waived its late-notice defense. Defendant points to the policy's prompt notice provisions, which state, "'[a]ll rights, terms, condition [*sic*], and exclusions in your policy are in full force and effect and are completely reserved,' and that '[n]o action by any employee. . . or other person on behalf of [Defendant] . . . shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.'" (ECF No. 114 at 18–19.) Defendant also points to the "many undisputed facts that have come to light since February 2016 and that directly bear on [Defendant's] late-notice defense." (*Id.* at 19.) These facts include: (1) that R3NG told Plaintiff about hail damage to its roofs almost eight months before Plaintiff reported the loss, (2) that plaintiff's property manager is contractually obligated to inspect the property every two weeks, and (3) that Ms. Countryman discovered "obvious" hail damage nearly three months before reporting the loss. (*Id.*) According to Defendant, "[s]ince none of these facts came to light until after [Defendant] issued payment, Plaintiff cannot possibly prove that [Defendants] had 'full knowledge of the right waived and the facts on which the waiver is based.'" (*Id.* (quoting *Layman v. McComb*, 524 F. Supp. 1091, 1095 (D. Colo. 1981).)).

The Court is persuaded by Defendant's argument, and concludes that no reasonable jury could find that Defendant waived its late notice defense. In its communication with Plaintiff, Defendant explicitly reserved this defense. Additionally, Defendant learned of new information that supports its late notice defense only after

tendering payment. Thus, in the Court's view, no reasonable jury could find that Defendant waived its late notice defense. As a consequence, the Court concludes that there remains no genuine issue of material fact that Plaintiff failed to timely report its loss and that this delay was unreasonable.

    3.    Prejudice

Defendant claims that it was prejudiced by this unreasonable delay. (*Id.*) The Colorado Supreme Court "established the standard that, if the insured has unreasonably provided delayed notice to an insurer, the insurer may deny coverage benefits only if it can prove by a preponderance of the evidence that it was prejudiced by the delay." *Friedland*, 105 P.3d at 644. The Colorado Supreme Court has "permitted an insurer to deny benefits only where its ability to investigate or defend the insured's claim was compromised by the insured's failure to provide timely notice." *Clementi v. nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 232 (Colo. 2001).

Here, Defendant makes two arguments to establish that it has been prejudiced. First, the parties agree that Defendant is only liable for hail damage caused by the September 2014 storm. (ECF No. 101 at 5, ¶ 11.) Defendant claims that "had Plaintiff promptly reported the damage shortly after the storm occurred, [Defendant] could have determined what portion of the hail-related damage to the [Sunflower] Property resulted from the September 2014 Storm versus previous storms." (ECF No. 94 at 22.) Second, Defendant's engineering expert, "[Amber] Prom has opined that Plaintiff's delay of nearly 15 months in reporting the loss to [Defendant] made it impossible for her or anyone else to be able to differentiate between hail damage from the September 2014 Storm and hail damage from any other storm." (*Id.*) Specifically, Defendant

18

argues that "but for Plaintiff's delayed reporting of the loss, [Defendant] would not have had to hire an engineer to conduct extensive weather data research. . . . [Defendant] would not have had to depose Plaintiff's causation expert on the issues relating to when the damage to the [Sunflower] Property likely occurred." (*Id.* at 22–23.)

Plaintiff argues that "there are material facts in dispute regarding the prejudice that [Defendant] suffered from a delay in the reporting of the claim." (ECF No. 101 at 27 (parentheses omitted).) First, according to Plaintiff, Defendant's argument that it has been prejudiced by Plaintiff's failure to give prompt notice is "unavailing because the only damages [Defendant] can point to are fees that it has had to pay for experts and investigation during the litigation process. Those costs are not the result of any prejudice [Defendant] has suffered with regards to determining the age of the hail damage and whether the damage was covered, they are simply costs that [Defendant] has necessarily incurred as part of its own defense in this lawsuit, and, notably, of its own choosing." (ECF No. 101 at 28.) Second, Plaintiff claims that Defendant has not suffered any prejudice from the late notice, because "[Defendant's] own investigation determined that there is no need to distinguish newer hail damage from older hail damage. [Defendant's] investigation determined that 100% of the hail damage to the Sunflower Property was from the September 29, 2014 storm." (*Id.*)

In their Reply brief, Defendant argues that "the burden on [Defendant] to establish prejudice is not particularly 'high'." (ECF No. 114 at 19.) According to Defendant, "to demonstrate prejudice, [it] need not prove, for example, that Plaintiff's delay completely prevented [Defendant] from making any investigation into the date of loss. Rather, under Colorado law, it is enough that the delay prevented [Defendant]

from employing a more reliable or less expensive means of investigation." (*Id.*) Defendant claims that the specific prejudice it suffered here is that "instead of being able to determine with relative ease the portion of hail damage that the September 2014 storm caused to the [Sunflower] Property, [Defendant] has had to expend tremendous time and money fighting over this causation issue by hiring and deposing experts." (*Id.* at 20.)

The Colorado Supreme Court has "decline[d] to require that the insurer demonstrate *substantial* prejudice, as some courts have done." *Clementi*, 16 P.3d at 232 n.10. Thus, the Court concludes that Defendant has met its burden to show that it was prejudiced by the delayed notice.

In this regard, Plaintiff points to letters from Defendant and other documents to support its claim that Defendant determined that "100% of the hail damage to the Sunflower [P]roperty was from the September 29, 2014 storm." (ECF No. 101 at 28.) Specifically, Plaintiff points to (1) an internal e-mail between Defendant's adjuster and her supervisor, stating that "[t]his Hail report would support a loss date of [9]/29/14 I believe" (*id.*); (2) a summary loss report form where Defendant's adjuster answered the "Description of Loss" section by stating "[t]he loss was the result of a Hail storm on 9/29/2014 at the insured's property located at 3400 S Eagle St, Aurora, CO 80014-8322" (*id.*); and (3) another internal e-mail between Defendant's adjuster and her supervisor, which states "based on the size of the hail, the closeness of the occurrence to the loss location and the evidence of damage, it is a covered loss" (*id.*).

The Court has reviewed and considered these exhibits, and is troubled by the

fact that it appears to the Court that Plaintiff has mischaracterized some of these statements and, further, that it has attempted to present them without the necessary context. Specifically, the first and third exhibits referred to are internal documents and cannot be interpreted as conclusive findings. The second exhibit referred to is a general initial description of the loss and also does not reflect a conclusive finding. Additionally, none of the exhibits that Plaintiff points to suggest that Defendant made a determination about "100% of the hail damage."

Thus, when the facts are considered in their totality, the Court concludes that a reasonable jury could not find that Defendant was not prejudiced by Plaintiff's delay in reporting the hail damage.[3] Therefore, there is no genuine issue of material fact that Plaintiff violated the notice-prejudice rule. Accordingly, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's breach of contract claims.

**B.     Defendant's Motion for Summary Judgment with Respect to Plaintiff's Bad Faith Claims**

Defendant also seeks dismissal of Plaintiff's statutory and common law bad faith claims. (ECF No. 94 at 24.)

The Tenth Circuit has held that "[i]t is settled law in Colorado that a bad faith claim must fail if, [] coverage was properly denied and the plaintiff's only claimed damages flow from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009).

Thus, here, because Plaintiff's breach of contract claim fails as a matter of law

---

[3] The Court disregards and makes no ruling about Defendant's claim that it was prejudiced by needing to incur additional expense *in this lawsuit.*

and Plaintiff's only damages "flow from the denial of coverage," Plaintiff's common law and statutory bad faith claims also fail as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is granted with respect to Plaintiff's bad faith claims.

**C.    Defendant's Motion for Summary Judgment with Respect to Plaintiff's Demand for Special Projects Fee**

Finally, Defendant asks the Court to dismiss Plaintiff's claim that it is entitled to recover a "special projects fee" from Defendant. (ECF No. 94 at 24.) According to Defendant, "[t]his fee is based on Plaintiff's 'Association Management Agreement' with Client Preference, which stipulates that for 'special projects' that Client Preferences coordinates on Plaintiff's behalf that cost more than $300,000, Client Preference is entitled to recover from Plaintiff a fee equaling 4 percent of the total project cost." (*Id.*) Defendant states that "Plaintiff has never cited any provision in the Policy establishing that [Defendant] is liable to pay this fee. None exists." (*Id.*)

Plaintiff raises two arguments in response. First, Plaintiff argues that the special projects fee "is part of the cost this policyholder has incurred as a cost of dealing with the claim." (ECF No. 101 at 30.) They contend that the cost "pertains solely to Client Preference providing significant assistance in the administration and oversight on the claim" and is therefore akin to "other costs associated with first party insurance claims such as overhead and profit, [which] are not specifically provided for in standard first party insurance policy language, [although] industry standards call for the payment of such expenses." (*Id.*)

Second, Plaintiff contends that "[i]n first party insurance breach of contract actions, consequential damages from contract law apply, and a policyholder is entitled

22

to those damages the insurer could reasonably foresee at the time the policy was bound." (*Id.*)

The Court concludes that Plaintiff's strongest argument to support its claim to the special projects fee is that the fee is a consequential damage that Defendant should have foreseen. However, in order to establish this argument, Plaintiff needed to point to specific case law regarding special projects fees. In the Court's view, Plaintiff's claim that Defendant is liable for a special projects fee arising from a contract between Plaintiff and its property management company is so unprecedented that, in the absence of specific supporting case law, a special provision in the Policy is required to establish liability for this fee. Therefore, the Court determines as a matter of law that the special projects fee is not an expense for which Defendant may be liable. Accordingly, Defendant's Motion for Summary Judgement is also granted with respect to Plaintiff's claim for special projects fee.

## V. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's construed Motion for Summary Judgment (ECF No. 93) on Defendant's counterclaims is DENIED in its entirety;

2. Defendant's counterclaims survive Plaintiff's construed Motion for Summary Judgment and will be tried to a jury;

3. Defendant's Motion for Summary Judgment (ECF No. 94) is GRANTED in its entirety;

4. Plaintiff's breach of contract claim, common law and statutory bad faith claims, and claim for special project fees are DISMISSED;

5.	Plaintiff's Objection to Defendant's Summary Judgment Evidence Related to Expert Witnesses (ECF No. 100) is STRICKEN for violating the Court's Practice Standards, without prejudice to Plaintiff filing a proper Rule 702 motion if it has a good faith basis for doing so, within ten weeks of the Final Trial Preparation Conference (see WJM Revised Practice Standard III.G.1.a); and

6.	This matter REMAINS SET for a Final Trial Preparation Conference on **October 1, 2018 at 2:00 p.m.**  Given that the trial will proceed solely on Defendant's counterclaims, the length of the jury trial is **REDUCED TO 5 DAYS** and REMAINS SET to begin on **Monday, October 15, 2018 at 8:30 a.m.**  Both proceedings will be held in Courtroom A801.

Dated this 14th day of May, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge