IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-2946-WJM-NYW

SUNFLOWER CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation,

    Plaintiff and Counterclaim Defendant,

v.

OWNERS INSURANCE COMPANY,

    Defendant and Counterclaimant.

## ORDER ON PARTIES' MOTIONS *IN LIMINE*

Defendant Owners Insurance Company brings counterclaims against Plaintiff Sunflower Condominium Association, Inc. for breach of contract and recoupment. The Court has explained the relevant factual and legal background of this case in detail in other recent Orders, and familiarity with that background is presumed. (*See, e.g.*, ECF No. 149.) Now before the Court are Plaintiff's Motion *in Limine* (ECF No. 159 ("Plaintiff's Motion")) and Defendant's Motion *in Limine* (ECF No. 160 ("Defendant's Motion")). For the reasons explained below, each motion is granted in part and denied in part.

## I. PLAINTIFF'S MOTION

### A. Dismissal of Plaintiff's Affirmative Claims Against Defendant

Plaintiff moves for a pretrial order precluding Defendant, its witnesses, and its counsel from mentioning that Plaintiff had previously filed affirmative claims against Defendant and that these claims were dismissed by the Court. (ECF No. 159 at 2.)

Plaintiff argues that such evidence is irrelevant and prejudicial pursuant to Fed. R. Evid. 401, 402, and 403.

In its Response to Plaintiff's Motion *in Limine* (ECF No. 174 ("Defendant's Response")), Defendant contends that the Court's dismissal of Plaintiff's claims is relevant because it refutes Plaintiff's contention that Plaintiff was excused from contractual performance. (ECF No. 174 at 1.)

Plaintiff's Motion regarding the dismissal of its affirmative claims against Defendant is granted to the extent that the Court will inform the jury in a generic manner that Plaintiff initiated this lawsuit but that its affirmative claims are no longer at issue in the case. Defendant and its counsel are precluded, however, from referring to the *dismissal* of Plaintiff's claims and in particular, the manner in which they were disposed of. Additionally, Defendant's counsel is ordered to instruct their witnesses to not refer to the dismissal of Plaintiff's claims or the manner in which they were ruled on in this case.

## B.  Expert Stephen Plitt's Testimony

Plaintiff argues that Defendant should be prohibited from calling its expert, Stephen Plitt ("Plitt"), because his testimony is now irrelevant and prejudicial. (ECF No. 159 at 2.) Defendant had originally designated Plitt as an expert to support its defense against Plaintiff's claims. (*Id.* at 3.) Specifically, his affirmative expert report opined on the reasonableness of Defendant's actions in processing and handling the insurance claims. (*Id.*) Thus, his opinions in the original expert report all related directly to Plaintiff's claims, which are no longer in the case. (*Id.*) Plitt later filed a supplemental

2

expert report based on his review of two other experts' opinions. (*Id.*) In this report, Plitt provided a preliminary opinion regarding the reasonableness of Defendant's breach of contract claim. (*Id.*) However, Defendant did not designate Plitt as an expert in support of its counterclaims. (*Id.*) Thus, Plaintiff argues that because its affirmative claims have been dismissed, Plitt's opinions related to those claims must be excluded at trial, because they have no bearing on the specific factual elements in the remaining claims. (*Id.*)

In its Response, Defendant argues that many of Plitt's opinions remain relevant and admissible. (ECF No. 174 at 1.) Defendant intends to prove that Plaintiff acted intentionally when it made misrepresentations in the claim process because it was engaging in what it has characterized as morally hazardous behavior. (*Id.* at 2.) Plitt identifies the concept of opportunistic moral hazard in his disclosed opinions and presents the 4% special projects fee as an example. (*Id.*) Thus, Defendant argues, Plitt "should be permitted to testify and explain the concept of moral hazard to the jury." (*Id.*) Defendant claims that it "would be helpful for lay jurors to hear an insurance-industry expert explain and describe the meaning of moral hazard and the role of the policy's fraud clause in fighting it." (*Id.*)

The Court does not find Defendant's argument persuasive with respect to Plitt's testimony. Defendant designated Plitt as an expert to defend against Plaintiff's bad faith claims, and these claims are no longer part of this case. Of equal import is the fact that a lay jury can easily understand the *concept* of moral hazard, even if the jurors have not heard the specific *phrase* "moral hazard," without the testimony of an expert

witness to instruct them on the term. Accordingly, the Court grants Plaintiff's Motion and will preclude Defendant from calling Plitt as an expert witness at trial

**C.     Documentation or Testimony Related to the Repair of Plaintiff's Roofs Prior to the September 2014 Date of Loss**

Plaintiff argues that Defendant should be prohibited from introducing into evidence any documentation or testimony related to bids for, or work completed on, the repair and/or replacement of Plaintiff's roofs prior to the September 2014 date of loss. (ECF No. 159 at 6.) In 2007, Plaintiff hired Hammer Property Services to replace some of the sloped roofs in the community. (*Id.* at 7.) In 2014, Plaintiff received a bid from Kieft Construction to conduct work on a flat roof on Plaintiff's property. (*Id.*) Defendant intends to use this evidence to show that Plaintiff tried to charge Defendant significantly more than the actual cost of the roofs. (ECF No. 174 at 2.)

Plaintiff argues that such evidence is irrelevant to the claims at hand, because there "is simply no way to properly compare" the scope of the work on the pre-September 2014 invoices and bids to the scope of the repair required after the 2014 storm which gave rise to this insurance claim. (ECF No. 159 at 7.) Plaintiff further argues that there is also no way to compare the unit pricing on the pre-September 2014 invoices to the unit pricing in their present estimate, because the pre-September 2014 estimates contain less detail than the present estimate. (*Id.*) For example, the Hammer Property Services pre-September 2014 estimate includes a single line item indicating that Hammer completed "the removal and replacement of roof and four skylights." (*Id.*) It does not specify whether this included work on the HVAC units, doors, handrails, gutters, etc., whereas all of these items were specifically included in

4

Plaintiff's present estimate. (*Id.*) Plaintiff claims that the Kieft Construction bid has the same deficiencies and thus "there simply is no comparison to be made." (*Id.*)

Additionally, Plaintiff argues that the Hammer Property Services and Kieft Construction bids are hearsay and should be excluded pursuant to Fed. R. Evid. 801 and 802. (*Id.* at 8.) According to Plaintiff, because Defendant intends to use these bids to support the proposition that the bids reflect a reasonable cost of repair/replacement, Defendant will be using the bids for the truth of the matter asserted. (*Id.* at 9.)

Defendant argues that the bids are highly relevant because "it shows that [Plaintiff] tried to charge [Defendant] vastly more than the actual cost of the roofs—in direct violation of the policy's fraud clause." (ECF No. 174 at 2.) Defendant contends that they have designated an expert, Gary Stevens, to compare the specific cost estimates for pre-September 2014 storm damage to the present estimate. (*Id.* at 3.) He was able to subtract elements not included in the actual cost documents from 2007 and convert the present estimate into 2007 dollars using cost data from that year. (*Id.*) Defendant claims that "[Plaintiff's] argument fails as a threshold matter, because it goes to the weight and not the admissibility of the evidence, which should therefore not be excluded." (*Id.*)

Defendant further argues that Plaintiff's actual-cost documents should not be excluded under the hearsay rule, because (1) the bids are business records (*id.* at 4), (2) the actual-cost documents are being offered for purposes other than the truth of the matter asserted (*id.*), and (3) the bids are "adoptive admissions" under Fed. R. Evid. 801(d)(2)(B) (*id.* at 5). The Court will first address the first argument, then the third, and

5

conclude with the second.  But the Court first must dispel some confusion.  Both parties seem to believe that the "truth of the matter asserted" in the previous bids is that the amounts bid reasonably reflected the value of the materials and services offered.  That is incorrect.  The truth of the matters asserted by the previous bids is that the bidding parties were willing to provide the materials and services at the stated price.

Now, as to Defendant's first argument for overcoming a hearsay objection, Defendant maintains that the bids were all generated by contractors in the ordinary course of regularly conducted business activity.  (*Id.* at 4.)  Defendant says that it can issue trial subpoenas to the custodians of the records at Hammer Property Services and Kieft, and have these custodians establish the documents' status as non-hearsay business records.  (*Id.*)  However, adding those custodians as witnesses would require amendment of the Final Pretrial Order, and the Court recently denied Defendant's motion to that effect.  (*See* ECF No. 196.)  This argument therefore fails.

As to Defendant's adoptive admissions argument, Defendant cites no authority that accepting a bid is an adoption of the bidding party's statement (which, in any event, would only be adoption of the bidding party's position that it is willing to provide the materials and services at the stated price).  So this argument also fails.  Defendant fails to justify any means of admitting the prior bids for their truth.

As to Defendant's non-hearsay-purpose argument, Defendant says that the evidence can come in at least to show Plaintiff's willingness to pay the bid price, which is in turn probative of Plaintiff's views on what it is reasonably willing to pay for roofing services of a certain scope.  In this regard, the Court asked Plaintiff to submit additional briefing to support its Rule 401, 402, and 403 objections to this potential use of the prior

6

bids. (ECF No. 191.)

Plaintiff asserts two main arguments in its supplemental briefing. (ECF No. 194.) First, Plaintiff argues that Xactimate does not categorize labor and materials in the same manner for the same job as other price lists and therefore operates as a different estimating language than other estimates and pricing tools. (ECF No. 194 at 3.) Second, Plaintiff argues that "[e]ven if this comparison evidence has some probative value, it would [require] a jury to understand construction estimate details in a manner [] which will likely cause confusion and potentially steer them improperly towards [Defendant's] contentions." (*Id.* at 4.)

The Court does not find either of these arguments convincing, given that Defendant has designated an expert, Gary Stevens, to convert the Xactimate estimates and the previous bids to make them comparable and to explain to the jury how the different sets of estimates can be compared. Plaintiffs have failed to explain why Defendant's proposal to have Gary Stevens explain how to compare the estimates is improper. However, Plaintiff is free to challenge his comparison technique on cross examination, and thus the Court agrees with Defendant that Plaintiff's argument goes to the weight attributable to the proffered testimony, but does not preclude its admission altogether. Thus, Plaintiff's Motion to prohibit Defendant from introducing into evidence any documentation or testimony related to bids for, or work completed on, the repair and/or replacement of Plaintiff's roofs prior to the September 2014 date of loss is denied. However, and as previously discussed, these documents cannot be admitted for the truth of the matter asserted. (ECF No. 196.)

## II. DEFENDANT'S MOTION

Defendants move to have seven categories of evidence excluded:

1. Evidence related to Defendant's underwriting process and underwriting inspections (*id.* at 3),

2. Evidence related to Defendant's decisions regarding detach and reset costs (*id.*),

3. Evidence related to Defendant's claim guidelines, Defendant's purported failures to follow the guidelines, and other criticism of Defendant's claim handling (*id.* at 4),

4. Testimony from a surprise witness identified only as an unnamed representative of Plaintiff (*id.* at 5),

5. Testimony from a "surprise witness" identified only as an unnamed representative of Defendant (*id.* at 6),

6. Testimony from Mike Spanbauer, Plaintiff's insurance agent (*id.*), and

7. Testimony from Craig Dixon (*id.* at 7).

As an initial matter, Plaintiff's counsel does not oppose exclusion of evidence categories 5 or 7. Thus, Defendant's Motion is granted with respect to these categories and testimony from a "surprise witness" identified only as an unnamed representative of Defendant and testimony from Craig Dixon are excluded.

### A. Evidence Categories 2 and 3

Defendant argues that evidence related to its failure to include A/C detach and reset costs in its original damages estimate and evidence related to Defendant's claim guidelines, its purported failure to follow its claim guidelines, and other criticisms of

8

Defendant's claim handling should be excluded because they relate solely to Plaintiff's bad faith and contract claims. (ECF No. 160 at 3–4.) Defendant maintains that this evidence has no relevance as to whether Plaintiff intentionally inflated the amount of its insurance claim or misrepresented the date when it discovered the loss. (*Id.*)

In its Response, Plaintiff contends that this evidence also relates to Defendant's counterclaims and Plaintiff's defenses to those counterclaims. (ECF No. 169 at 1.) In particular, Plaintiff argues that it "can use evidence that [Defendant's] estimate of damages was improperly deflated as proof that [Plaintiff's] own estimate accurately and correctly reflected the total damages to Plaintiff's property as a result of the hail damage." (*Id.* at 2.)

The Court finds that Plaintiff's argument is a *non sequitur*. Proving that Defendant's estimate was unreasonably low is not probative of whether Plaintiff's estimate itself is reasonable. Accordingly, the Court grants Defendant's Motion with respect to categories 2 and 3 and Plaintiff will be precluded from introducing evidence related to Defendant's failure to include A/C detach and reset costs in its original damages estimate and evidence related to Defendant's claim guidelines, its purported failure to follow its claim guidelines, and other criticisms of Defendant's claim handling.

## B.     Evidence Categories 1 and 6

Defendant argues that underwriting evidence has no relevance to whether Plaintiff violated the fraud clause and should therefore be excluded. (ECF No. 160 at 3.) Similarly, Defendant wants testimony from Plaintiff's insurance agent, Mike Spanbauer, to be excluded because his testimony will focus on the underwriting issues

9

and he is not alleged to have any admissible evidence regarding whether Plaintiff violated the insurance policy's fraud clause. (ECF No. 160 at 6.)

Plaintiff responds that it should be allowed to submit this evidence to defend itself against the allegation that its misrepresentation of the date of discovery of the damage harmed Defendant by preventing Defendant from being able to distinguish between pre-2014 storm damage and post-2014 storm damage. Plaintiff maintains that in order to defend itself, it must be allowed to produce evidence discrediting Defendant's submission that there was any such previous damage to Plaintiff's property.

Plaintiff has shown that there *may* be an admissible purpose for this evidence. If the underwriting materials are probative of whether previous hail strikes were or were not observed by Defendant's representative or agent, it may be admissible against Defendant on that matter. Similarly, if Mr. Spanbauer has personal knowledge of hail strikes or their absence on a particular date (because, *e.g.*, he accompanied Defendant's representative or agent on an underwriting inspection), his testimony may be relevant and admissible. But at this stage, the Court does not have a sufficient understanding of what Plaintiff seeks to introduce. The Court therefore cannot make a ruling either way, and so this portion of Defendant's motion is denied without prejudice to renewal at trial.

C.  **Evidence Category 4**

Defendant argues that the testimony from a "surprise witness" identified only as an unnamed representative of Plaintiff should be excluded because Plaintiff is "laying an ambush for [Defendant] at trial." (ECF No. 160 at 6.) According to Defendant, "no

10

local rule or practice standard permits [Plaintiff] to hide the identity of a live trial witness behind a generic designation." (*Id.*)  Defendant claims that allowing such testimony will deprive Defendant of the opportunity to cross-examine that witness.  (*Id.*)

Plaintiff responds that it is entitled to have a corporate representative sit at counsel's table and testify on behalf of Plaintiff.  (ECF No. 169 at 4.)  Defendant has already deposed Plaintiff's corporate representative, but that particular individual is for some reason not available to testify at trial.  (*Id.*)  Moreover, in its Response, Plaintiff identified Ralph Reed as its corporate representative.  (*Id.*)

The Court agrees that Plaintiff is entitled to have a corporate representative sit at counsel's table and testify on behalf of Plaintiff at trial.  Mr. Reed will nonetheless be held to the deposition testimony of Plaintiff's Rule 30(b)(6) deposition witness, as if he had been Plaintiff's Rule 30(b)(6) designee.  In other words, Defendant will be allowed, if appropriate, to impeach Mr. Reed based on allegedly inconsistent Rule 30(b)(6) deposition testimony of Plaintiff's former designee.  In addition, Mr. Reed will not be permitted to testify on topics not addressed at the Rule 30(b)(6) deposition.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff and Counterclaim Defendant Sunflower Condominium Association, Inc.'s Motion *in Limine* (ECF No. 159) is GRANTED IN PART and DENIED IN PART, as set forth above; and,

2. Defendant and Counterclaimant Owners Insurance Company's Motion *in Limine* (ECF No. 160) is GRANTED IN PART and DENIED IN PART, as set forth above.

Dated this 9th day of October, 2018.

BY THE COURT:

William J. Martinez
United States District Judge